CAROTHERS and another *against* The lessee of DUN-
NING and others.

IN ERROR.

ERROR to the Common Pleas of *Cumberland* county, in an
ejectment brought by the lessee of *Robert, William, Ezekiel,*
and *Mark Dunning,* against *Elizabeth* and *James Carothers,*
in which a bill of exceptions was returned to the charge of
the Court. The material facts of the case were as follows:

It is not fair
to select a few
sentences
from the
charge of the
Court; the
whole must be
taken toge-
ther.

The plaintiffs below, the *Dunnings,* claimed as co-heirs
under a warrant to *Robert Dunning,* deceased, dated the
19th *November,* 1743, and a warrant to *William Armstrong,*
dated *April,* 1743, which was purchased by *Robert Dun-
ning.* The defendants derived title under what is known by
the name of a *Blunston's License,* granted to *John Calhoun,*
17th *February,* 1734–5. Each party obtained a survey, and
on the 24th *November,* 1766, *Thomas Calhoun,* (son of *John,*)
having entered a *caveat* against the acceptance of a survey
made for *John Dunning,* (son of *Robert,*) the cause was
heard by the board of property, (in the absence of *Dunning,*
who had been served with notice,) and decided in favour of
*Calhoun.* In the year 1768, an ejectment was brought by
*James Calhoun* against *John Dunning,* which was continued
to *April* Term, 1773, when the defendant refusing to confess
lease, entry, and ouster, judgment was entered against the

The deci-
sions of the
board of pro-
perty are re-
ceived as evi-
dence; but
never have
been supposed
to be conclu-
sive as to law
or fact.
It is not er-
ror for the
Judge to state
the evidence
truly, declin-
ing to give an
opinion on
points on
which no opi-
nion is re-
quested.
Where an
entry was
made on land
by a party, it
is not error in
the Judge, to

leave it to the jury to decide, with what intent the entry was made.
The legal entry of one co-heir or tenant in common, enures to the benefit of their co-heirs and
co-tenants, not only so far as concerns themselves, but strangers.

casual ejector, and the defendant was ordered to pay the costs. In consequence of this judgment, *James Calhoun* obtained possession, and in *December*, 1773, sold to *James Carothers* for 900 pounds, payable by instalments, the last of which was to be paid on the 1st *May*, 1780. *John Dunning* brought an ejectment against *James Calhoun*, to *April* Term, 1774, which was tried 30th *May*, 1782, when the defendant obtained a verdict, on which judgment was entered. Another ejectment was brought by the *Dunning* family against *Carothers* to *August* Term, 1796, on which the plaintiffs obtained a verdict in *May*, 1803, which was set aside by the Supreme Court, and a new trial ordered. In *April*, 1805, a new trial was had, and a verdict given for the defendant, on which judgment was entered. Both plaintiffs and defendants in the present suit gave evidence of early improvements under their respective titles, and the defendants, moreover, gave evidence of very valuable improvements, after possession obtained by *Calhoun* on the first ejectment. The defendants proved a long possession, and relied on the act of limitations. The plaintiffs proved by the testimony of *James Davidson*, that *William Dunning*, one of the plaintiffs, (who had in 1796, powers of attorney from his brothers to recover the estate,) " attended every year prosecuting and claiming " his title on the land." Neither party requested the Court to give an opinion on any particular point. The charge was strong in favour of the defendants, but the jury found against them.

1. The first error assigned was, that the Court said, that the improvement was made on *Ezekiel Dunning*'s land, and not on *Robert Dunning*'s land ; and this they submitted to the decision of the jury. Whereas, if it was made on the land claimed by *Calhoun*, and granted by the license, it would be wholly immaterial.

The charge of the Court was as follows : " It is alleged " too on the part of the plaintiff, and endeavoured to be " proved, (with what success you may determine,) that the " improvement made by *John Calhoun*, (if any improvement " was made,) was upon the land of *Ezekiel Dunning*, and not " upon the land in dispute."

2d Error. That the Court charged, " that if *Calhoun* never " settled on, or improved the land, or relinquished it ; knew " of the payment and transfer of *Armstrong* to *Dunning*, and

1817.

CAROTHERS
and another
*v.*
The lessee of
DUNNING
and others.

1817.

Carothers
and another
v.
The lessee of
Dunning
and others.

" acquiesced in *Dunning's* claim, and thereby abandoned all
" right, as was contended by plaintiffs' counsel, *Calhoun* would
" not have a spark of title."

3d Error. That the Court charged the jury, that " after
" the lapse of 46 years with a possession of 38 years, if you
" are of opinion, that most of the facts stated in the decision
" of the board of property have been legally proved before
" you, it furnishes a presumption, that the other facts detail-
" ed in it were established by satisfactory evidence." Where-
as, after the great lapse of time from the decision, the facts
stated are *prima facie* evidence, and if not contradicted by
testimony, the jury should have been directed to take them
as true.

4th Error. That the jury were directed to consider, whe-
ther the value of the land was increased by the improve-
ments, and whether the land, if now in wood, would not be
of as much value as with all the buildings ; and this, to let in
the question, whether the improvements made by the defend-
ants could in any degree affect the title of the plaintiffs.

The Court charged, that " evidence had been given of
" the value of the improvements made by *James Carothers*,
" for the purpose of shewing that the land, if it had remained
" in the state in which it was when *Carothers* took possession
" of it, would have been greater than it is now, with all the
" improvements."

5th Error. That there is error in the opinion of the Court
with respect to the entry, inasmuch as the Court submit to
the jury the question, whether on the facts proved a legal
entry to prevent the bar arising on the statute of limitations
was made, leaving it to the jury to decide with what view,
and for what purpose, one of the plaintiffs was every year
prosecuting his claim on the land without any proof of acts
done or declaration made, that the entry was for the purpose
of claiming the possession. The Court, though called upon
to state what was a legal entry, left it to the jury to consider
the view with which the plaintiff was on the land.

Charge of the Court. " The law is, that an entry to avoid
" the statute must be an entry, by the party claiming the
" right, or some other person duly authorised by him, for
" the purpose of taking possession. The jury will consider
" what were the facts in this case as to that particular. If
" no entry were made with that view, there is no entry with-

CAROTHERS
and another
*v.*
The lessee of
DUNNING
and others.

" in the meaning or intention of the act ; and the statute will " operate as a bar."

6th Error.  That *William Dunning* acted under a power of attorney from all his brothers but one, and thus acting, his entry should have been a special one, as well for himself as for his brothers ; whereas, the evidence is, that he was on the land prosecuting his claim.

Charge of the Court.  " If a proper entry be made by one " co-heir or tenant in common, it will enure to the benefit of " his co-heirs or co-tenants."

*Parker* and *Duncan*, for the plaintiffs in error.

On a charge to the jury every matter is open to investigation, and if the law is so erroneously or obscurely laid down, that the jury was misled, the judgment will be reversed.  Any point appearing on the charge may be assigned for error, whether that particular point was excepted to in the Court below or not.  4 *Binn.* 308. 4 *Cranch*, 171. 5 *Cranch*, 152. 6 *Binn.* 498.  If the law is laid down correctly as to part, but in consequence of silence as to part, the jury is misled, it is error.  6 *Binn.* 455.

1. *Calhoun*'s survey includes the spot where the improvement was first made ; whether it was on *Ezekiel Dunning*'s possession was immaterial, because no title had been shewn in *Ezekiel Dunning*.

2. There is error in the charge stating the effect of *Calhoun*'s never settling or improving the land.  The Court ought not to have left to the jury as matter of fact, whether *Calhoun* relinquished his title.  Where one has an incipient title, it cannot be taken from him by a second grant, unless he relinquishes his first title ; no period short of the statute of limitations can bar a person who has right.  3 *Binn.* 119, 120.

3. The decision of the board of property was *prima facie* evidence of the facts set forth in it; and the jury ought to have been bound by it, unless there was proof to the contrary.  After a great length of time a composition, or release, will be presumed.  1 *Fonbl. Eq.* 319, 320.  All things are presumed to be solemnly done, rather than ancient grants should be brought in question ; otherwise long possession would prove injurious, because it puts one off his guard in preserving papers and proof.  *Cowp.* 110. 216.

1817.

CAROTHERS
and another
*v.*
The lessee of
DUNNING
and others.

4. The real equity arising from improvements is the expense incurred, not the actual value of the land; because after 100 years, timber near a large town would be more valuable than any improvement.

5. The entry to avoid the statute of limitations must be to take possession, 4 *Johns.* 402. It must be formal; words must be spoken or acts done denoting the intent. *Lit.* sect. 401. There must be something to shew the *quo animo.* 1 *Saund.* 319. 3 *Black.* 174, 5. *Shepard's Epitome, tit. Entry.* It is said by KENT C. J. that it must be an entry for the purpose of taking possession. 4 *Johns.* 402. An entry must be an interruption of the possession, such as cutting a tree, or digging soil, or putting in beasts. *Lit.* sect. 401. It is no entry unless some act is done, which would give the person in possession an action in case the entry was unlawful. 1 *Plowd.* 93, 94. But here there is proof of nothing more than that *Dunning* prosecuted and claimed his title on the land; but the witness mentions no words spoken; nor was any act proved, yet this was left to the jury by the Court as evidence of entry.

6. There was no proof that *Dunning* declared, that he entered for the others as well as for himself. We admit, that an entry of one tenant in common is an entry for the whole, as concerns themselves, but not as concerns a stranger; although the entry of one joint-tenant or parcener stands for the whole even as respects strangers. Joint heirs under our act of assembly, are to be considered as tenants in common.

*Watts,* for the defendant in error.

1. It was very material to inquire whether *Calhoun* had made any settlement on the land for which he had license; and if the settlement was made on the land of *Ezekiel Dunning*, it was not within the license.

2. How could *Calhoun* have title if he had relinquished his claim under *Blunston's* license, and acquiesced in *Dunning's* claim? Yet, all that the Judge said was, that *Calhoun* had no title, if all these things were true. Abandonment is to be judged of by the jury, under all the circumstances. 2 *Smith's Laws*, 159. 165. 236.

3. The decisions of the board of property are not conclusive. The Court's charge was sufficiently favourable to the defendant in saying what it did.

1817.

CAROTHERS
and another
v.
The lessee of
DUNNING
and others.

4. We deny, that there is any such thing in the charge as this error asserts.

5. The entry was made claiming the land, and that was sufficient. No particular form of words is required when an entry is made. It was properly left to the jury whether an entry was made with a view of taking possession. No particular question was put to them.

6. The entry of one tenant in common enures for the benefit of all. Therefore, it was immaterial, whether *Dunning* mentioned, that he entered for the others, as well as for himself, or not. He had a power from the others when he entered.

TILGHMAN C. J. The errors assigned in this case, are exceptions to the charge of the Court, before whom the cause was tried. In the charge the evidence is so fully stated, that it is unnecessary for me to go into a detail. I shall, therefore, mention but a few of the most material facts, referring to the charge for the rest. [His honour here recapitulated the facts of the case.]

1. The first exception to the charge is, that the Court left it to the jury to decide, whether the improvement made by *John Calhoun*, was or was not, on the land of *Robert Dunning*. (Whereas, if the improvement was made on the land claimed by *Calhoun*, and included in the license, it was wholly immaterial whether it was on *Robert Dunning*'s land or not.) I confess, that as referring to the expressions of the Court, I can see no ground for this exception. " It " is alleged too, (says the Judge,) on the part of the plain- " tiff, and endeavoured to be proved, (with what success you " may determine,) that the improvement made by *John Cal-* " *houn*, (if any improvement was made,) was upon the land " of *Ezekiel Dunning*, and not upon the land in dispute." Now, in the first place, the matter submitted, was, whether the improvement was *on the land in dispute*, that is, *the land claimed under the license*. This, the defendant supposed to be material, because he had offered evidence to prove it. But, in the next place, the Court neither gave, nor were requested to give, any opinion concerning the legal effect of the improvement. But they gave, in another part of the charge, as strong an opinion as the defendant could wish, on the efficacy of *Blunston*'s *license*. It is

said expressly, that the license, from its descriptive na-
ture, is *equal to a survey*, and that the title under it, was
good, whether *Calhoun* paid the purchase money or not. I
see no error, therefore, in this part of the charge.

2. The second exception is, to the following passage. " If
" *Calhoun* never settled on, or improved the land ; or relin-
" quished it ; knew of the payment and transfer of *Armstrong*
" to *Dunning*, and acquiesced in *Dunning*'s claim, and there-
" by abandoned all right, as was contended by the plaintiff's
" counsel, *Calhoun* would not have a spark of title." The
plaintiff in error picks out a few words from the whole sen-
tence, and by severing them from the rest, endeavours to
make them appear erroneous. But this is not fair ; it is not
doing justice to the charge, to say, the jury were instructed,
" that if *Calhoun* never settled on the land, the defendant
" would not have a spark of title." The bare settling on
the land, was not made the sole criterion of title. Many
other strong circumstances were added, and if all were united,
it is clear, that there would not have been a spark of title,
because they would have demonstrated, that although *John
Calhoun* intended to take up the land, when he procured a
license from *Blunston*, yet he afterwards relinquished his
intention, (as he might lawfully do,) in favour of *Dunning*.

3. The third exception is, to the Judge's opinion respecting
the decision of the board of property. It is contended,
that after so great a lapse of time, that decision was *prima
facie* evidence of the truth of all the facts affirmed in it ; and
unless contradicted by evidence on the trial, the jury should
have been instructed to presume the truth of them. But,
it appears to me, that in speaking of this decision, the Judge
went as far as he ought to have gone, in support of it. The
board of property proceeds without much form, and decides
facts, without a jury. Their decisions are received as evi-
dence, but have never been supposed to be conclusive, either
as to law, or fact. The jury were told, that if most of the
circumstances stated in the decision, were, in their opinion,
proved by evidence produced to them, it furnished a strong
presumption that the rest were true ; but, that after all, they
must decide on all the facts, because the decision of the
board certainly was not conclusive. I can find no fault with
this. To have gone further, would, in my opinion, have been
going too far.

1817.

CAROTHERS
and another
*v.*
The lessee of
DUNNING
and others.

1817.

CAROTHERS
and another
v.
The lessee of
DUNNING
and others.

4. The fourth exception is, that the jury were directed by the Court, to consider, whether the value of the land was increased by the improvements, and whether, if now in wood, it would not be of as much value, as with all the improvements. In this there is said to be error, because the defendant's equity arises, not from the present value of the land, but from the money expended in improvements. I have examined the charge throughout, and can find no such direction. The Judge, in summing up the evidence, barely said, " that evidence had been given of the value of the im- " provements made by *James Carothers*, for the purpose of " shewing, that the land, if it had remained in the state in " which it was, when *Carothers* took possession of it, would " have been greater than it is now, with all the improve- " ments." Now it cannot be denied, that such evidence was given, and for the purpose stated by the Judge. If the evidence was improper, it should have been objected to by the defendant ; or, after it was given, the opinion of the Court might have been asked as to the legal effect of it. But it never can be error, for the Judge to state the evidence truly, declining to give an opinion on points on which no opinion is requested.

5. The fifth exception is, that the Court left it to the jury to decide, with what intent *William Dunning*, one of the plaintiffs, entered on the land in dispute, and whether it was such an entry as in law would prevent the operation of the statute of limitations, whereas the jury should have been instructed what constituted a legal entry.

The plaintiffs had given evidence of an entry by *William Dunning* ; but it was a question for what purpose he entered. This was submitted to the jury, and very properly, for they alone could decide it. The *intent* of the entry, was to be inferred, from the words, and conduct, of the person who entered. No particular form, or words, are essential. One of the plaintiffs' witnesses, (*James Davidson*,) swore that *William Dunning*, went on the land, from year to year, *prosecuting and claiming his title*. The fact of entry being proved, the *quo animo* was material, and the Judge could not do otherwise than leave it to the jury. I do not find, in the record, any question proposed by the defendants' counsel, to the Court, with regard to the law of entry. There

was no error, therefore, in submitting it to the jury, without particular instruction as to the law.

6. The last exception is, that whereas *William Dunning* acted, not only for himself, but under a power of attorney from his brothers, he ought to have entered, with a special declaration, that he made the entry, as well on the part of his brothers, as for himself. But the Court instructed the jury, that if a legal entry is made by one co-heir or tenant in common, it enures to the benefit of his co-heirs, or co-tenants.

The counsel for the plaintiffs in error, concede, that the entry of one joint-tenant, or co-parcener, enures to the benefit of the others. But they suppose, that co-heirs under our act of assembly, are to be considered *as tenants in common*, and with regard to tenants in common they take a distinction; they admit, that the entry of one tenant in common enures to the benefit of the others, so far as concerns *themselves*, but not as concerns a *stranger*. No authority was cited in support of this distinction. And, indeed, it is not easy to comprehend, how the entry in this case, could operate for the benefit of *each other*, unless it affected the *stranger*, on whom the entry was made. The possession of tenants in common is one and undivided, neither can one alone support an action of trespass. The possession of one, therefore, is the possession of all, and if one enters generally, without saying for whom, it will be implied, that he entered according to law; that is to say, for himself and the others. I find a case, in which it was expressly decided, that the entry of one tenant in common, shall enure to the benefit of another, as regards *strangers*. (*Small* v. *Dale, Hob.* 120. *Moor.* 868. 14 *Vin.* 512. *P. a. pl.* 1.) A, being seised of land, held of the king, by knight's service, and having issue by several venters, devised it to his wife, for life. A, died, and his wife entered into the whole. The devise was void, for a third part of the land, which descended to B, the son of the first venter, who died, having never made an actual entry. It was held, that the entry of the widow of A, enured to the benefit of B, who was tenant in common with her of one third, and who, by virtue of her entry, became actually seised of one third. The consequence was, that of this third, there was a *possessio patris*, and it descended *to the heir of B, in exclusion of the issue of A, by the second*

1817.

CAROTHERS
and another
*v.*
The lessee of
DUNNING
and others.

1817.

CAROTHERS
and another
v.
The lessee of
DUNNING
and others.

*venter.* This is directly in point, for the issue by the second venter, were *strangers*, with regard to the title of B.   The charge of the Court, therefore, was right.

These are all the exceptions.   I am of opinion, that none of them have been supported, and the judgment should be affirmed.

GIBSON J.   The first error is not sustained in point of fact; for the locality of *Calhoun*'s improvement was not put to the jury as a matter of importance in the cause; nor could the jury, from any thing that was said in this particular, be easily misled.

It is objected, the jury were instructed, that if *Armstrong*'s right was transferred for a valuable consideration to *Dunning*; that if *Calhoun* never settled or improved the land, but relinquished it; knew of *Dunning*'s payment, and the transfer of *Armstrong*'s right; and acquiesced in *Dunning*'s claim, and thereby abandoned all right to the land; that then *Calhoun* would not have a spark of title in law or equity.   Who can doubt it?   *Calhoun* claimed under a *Blunston's license;* might he not abandon as he could have done, if he had held under a location?   If he never settled, or paid the purchase money under his license, it would be a clear abandonment. If, then, in consequence of the transfer of *Armstrong*'s title, *Calhoun* actually acquiesced in *Dunning*'s right, and abandoned his own under his license, he extinguished every spark of title that was before in him.   But it is said, this abandonment could not affect an after-acquired equity arising from improvements made by *Calhoun*, and those claiming under him, from verdicts obtained, and from delay in prosecuting the plaintiffs' claim.   In 1773, *Calhoun* obtained judgment by default against *John Dunning;* since when, he and those claiming under him, have made valuable improvements; and I grant, that *Dunning* unnecessarily delayed the prosecution of his right.   But what equity can that give? I know of no possession short of the period of the statute of limitations, accompanied or not with improvements, or the expenditure of money or labour, that will affect the claim of a plaintiff against a trespasser.   If *Calhoun* were, in fact, without title when he obtained possession, yet he was so far a trespasser, though he entered by process of law, that he might be turned out as such in a second ejectment, and be

subjected to an action of trespass for the *mesne* profits; the writ of possession would only protect his entry. *Dunning* was under neither a moral nor a legal obligation to bring his action within a shorter period than the statute requires, or to give notice to those in possession not to make improvements; the law gave him that period to consider, whether it were worth while to prosecute his claim or not; in the mean time all improvement was at the risk of the party making them. Like a very respectable *Irish* chancellor, I have a distaste to that kind of equity which enables a wrong-doer to improve the owner out of his estate. Improvements made under circumstances like the present, are very different from those made after possession, obtained under a parol contract of sale, which always have a powerful efficacy in taking the case out of the statute of frauds. Where the improver goes into possession with the assent of the plaintiff, and expends labour or money, it would be unconscionable to turn him out; but the case is different when possession is taken, contrary to the will of the party against whom the improvements are set up. I am of opinion, also, the defendant below could derive no equity from former verdicts in his favour. In what mode could they operate? Did they of themselves make an equitable title? Or if they were merely an ingredient, what additional facts or circumstances were necessary? Can the verdicts of former juries change a principle of law, or, (except under our late act of assembly making two verdicts in ejectment conclusive,) divest a right. I dislike that vague, intactible kind of equity, which, though reducible to no rule, is to float on the mind of the jury, and have an effect on the event of the cause. Where the event depends on a question of *fact*, verdicts of former respectable juries ought to have weight, and, in a doubtful case, turn the scale; they may be considered evidence of fact, but not an ingredient of an equitable title.

It is objected, the jury were instructed to consider whether the improvements made by the defendant were not, in fact, a deterioration of the property. If the defendant could, in any event, have derived an equity from the expenditure of money or labour, this would have been error; for such equity would not be affected by adventitious circumstances, such as the increase of the value of timber; and besides, the

equity does not in such case arise so much from the land being made better, as the situation of the improver being made worse by the expenditure. His improvements might be altogether worthless to any body else, and yet of great value to himself. But as the evidence of deterioration was introduced to rebut a supposed equity, which, in fact, had no existence, the defendant could receive no injury from misdirection on this point, and cannot assign it for error here.

It is contended, the decision of the board of property was *prima facie* evidence of the truth of the facts it recited; and that the jury should have been directed to consider them as true, till they were disproved. But no case has gone that length. The minutes are always read to shew *what passed before the board;* but to decide that a mere recital of certain facts having been proved to the satisfaction of the board is *prima facie* evidence of their truth, would be contrary to every rule of evidence, and attended with great danger of injustice. The hearing before the board was either on depositions, or by oral testimony: If on depositions, these, as being the best evidence, should have been produced, or their loss accounted for, and their contents proved: If on oral evidence, the witnesses themselves should have been called, or if they could not be had, then what they deposed before the board might have been given in evidence; but before evidence of what they deposed could be given, it should appear the opposite party had had an opportunity to cross-examine. But I deny that the evidence received any additional weight from having been believed by the board of property. Why take the facts at second hand, when, by mounting a step higher, we can judge for ourselves? The length of time which elapsed between the decision by the board, and the trial in court, operates against the propriety of leaving the evidence to the jury as *prima facie;* because it may, on that account, be the more difficult to shew that the witnesses, on whose evidence the board rested its decision, were unworthy of credit, or that the evidence was unfairly taken.

The jury were instructed, that an entry to avoid the statute of limitations must be made by the party claiming, or some one duly authorised by him, for the purpose of taking possession; and that if they were of opinion, from the evidence,

that no entry was made with that view, the statute would operate as a bar ; and also, that an entry by one co-heir or tenant in common, would enure to the benefit of the other co-heirs or tenants in common.  It is objected, the jury should have been instructed that the entry must be positively made out, and that there was no evidence of a declaration made, or act done, at the time, by *William Dunning*, to shew with what intention he entered.  This argument might have been urged with a shew of propriety on a motion for a new trial : but there was evidence that *Dunning* was, every year, prosecuting and *claiming his title* on the land, and from this I think a jury might infer that a formal entry was made.  But the sufficiency of the evidence is not the question ; an entry for the purpose of taking possession is good, and if the counsel had desired a more particular exposition of the law on the point, the opinion of the Court should have been specially required; without which, no omission is error.  For the rest, I do not concur with the counsel, that *William Dunning* should have entered specially, as well for his co-heirs as for himself, in pursuance of the authority he had for that purpose.  In *Ford* v. *Grey*, (*Salk.* 285.) it was held that the possession of one joint-tenant was the possession of the other, so as to prevent the statute from running against the title of either. But an attempt is made to distinguish joint-tenants from tenants in common, the estates of the latter being several ; and it is said the possession of one tenant in common is the possession of the other, *only as between themselves.*  But the law is, that nothing but an actual ouster, by one tenant in common, shall give him the exclusive possession.  *Fairclaim ex dem. Empson* v. *Shackleton.* (5 *Burr.* 2604.)  A mere form of entry, therefore, will not make that a several possession which would otherwise be joint : for parceners, after *recovering* severally, shall be parceners again.  *Co. Litt.* 164.  Where one parcener enters generally, and takes the profits, this shall, in law, be accounted the entry of both, and not a divesting of the moiety of her sister ; but if she enters *specially,* she gains her sister's part by abatement : yet her dying, seised, will not take away the entry of her sister.  *Co. Lit.* 243.  But in *Smales* v. *Dale*, (*Hob.* 120 ) it was decided, that even a special entry by one parcener will not abate the part of the

*1817.*

CARO. HERS and another
*v.*
The lessee of
DUNNING
and others.

other, but that an actual ouster is necessary for that purpose, and that *claim shall not alter the right*. For, in general, where two persons claim by the same title there shall be no adverse possession, so as to toll an entry of the one, but the entry of the other shall at all times be lawful. *Co. Litt.* 242.: and, therefore, if the father die seised, and the youngest son enter, the eldest son shall not have an action against him ; for the law presumes that he, who is so near him in blood, did not enter as an enemy, but as a friend, *to preserve the inheritance in his absence. Sharrington* v. *Strotton,* (*Plowd. Rep.* 306.) The law will not presume that *Dunning* entered in any other character than that of a co-heir ; and entering according to his estate, his possession shall be according to his estate, and shall be that of his co-heirs. But in *Smales* v. *Dale*, the very point was decided in an eject-ment by tenants in common, where it was held the entry of one plaintiff enured to all the others. *John Dunning*, the father of *William*, died in 1777 ; and, by the provisions of the intestate laws, then in force, his children inherited as tenants in common. This case, then, decides the question. On all the points, therefore, we are of opinion the direction was right, and the judgment must be affirmed.

DUNCAN J. gave no opinion, having been counsel in the cause.

*Judgment affirmed.*