## Altemas *against* Campbell.

An entry upon land will avoid the operation of the statute of limitation; but it must be accompanied by an explicit declaration, or an act of notorious dominion by which the claimant challenges the right of the occupant.

ERROR to a special court of *Indiana* county.

Nicholas Altemas against Andrew Campbell and William Gamble. Ejectment for a tract of land, containing three hundred and twenty acres:—for which the plaintiff gave in evidence a regular chain of title from the commonwealth down to himself.

The defendants relied upon the statute of limitation and gave proof, that they, and those under whom they claim, had been in possession of the land, for more than thirty years. To avoid the effect of this defence the plaintiff, having previously shown that in 1818 Mary Gilpin, Joseph Gilpin and others were the owners of the legal title, gave in evidence a power of attorney from them to Daniel Stannard Esq., whom they called as a witness who testified as follows:

"I received this letter of attorney not long after its date; soon after I got it, I sent or wrote to Andrew Campbell who, I understood, was residing on one of the tracts of land; he came to Indiana, to my house; I requested him to take a lease; I told him at whose instance—in behalf of Mary Gilpin's children; there was no agreement entered into at that time. It was then arranged that I should go to his house and see it: I did so, and again told him about his taking a lease: no agreement was entered into at that time, or any other. I was there but once; I do not distinctly recollect what he said; I never had any conversation with Mr Gamble; I did not ask Campbell to leave the place; Mr Campbell did not converse freely; I cannot state a single fact he stated; I do not recollect any thing he said, or a single fact that he stated; I was not there over half an hour; I went to Campbell's to get Mr Campbell to take a lease, but he did not do it; it was within a year after I received this letter of attorney; I do not recollect what Campbell said, when at my house; I cannot state what his reply was to me, when I wanted him to take a lease; I have often seen Mr Campbell; do not recollect any conversation at any other time; I do not recollect that he stated he would come at another time."

"Dr. John Gilpin sworn, testified—In 1827 or 1828 I went on the land; did not see Mr Campbell; I went again—not certain whether in 1827 or 1828—Mr Campbell was at home; I told him I was one of the heirs that claimed this land; he said a good many

[Altemas v. Campbell.]

claimed it—some other persons had been there claiming.   I showed
him the papers—had the patent and draft.   There was this under-
standing when I left him: he was to appoint one person and I an-
other, and we were to agree to what they would say.   I sent a
man of the name of Ware, from Blairsville in pursuance of that
understanding; Mr Ware returned, and said he had done nothing.
I wanted to settle the difficulty.   This conversation with Mr
Campbell occurred on the land.   Never had any conversation with
Mr Gamble.   I do not recollect telling Mr Campbell I would let
the law settle it between us."

The ground taken by the plaintiff below was, that the entry
made by Daniel Stannard Esq., and Dr Gilpin, as proved by them,
was such as to avoid the operation of the statute of limitation and
requested the court so to charge the jury.

*Burnside*, president.—We refuse to answer this point as request-
ed.   If the possession was adverse, such entry as proved and sta-
ted in this point, will not prevent the operation of the statute.   *The
act requires a suit or action:* an action now pressed, will not take
the case out of the statute; the construction contended for, would
make the statute a dead letter.

The evidence, as given by Mr Stannard and Dr Gilpin, is for
the jury, and will be considered by them in determining whether
the defendants' possession was adverse; we submit it to your con-
sideration, but we refuse to instruct you that their evidence takes
the case out of the statute.

*Buffington*, for plaintiff in error, cited *Co. Lit.* 15, 252, 238; 1
*Salk.* 285; 3 *Salk.* 132; 3 *Bla. Com.* 175; 10 *Serg. & Rawle* 148:
1 *Dall.* 16, 67; 3 *Binn.* 388; 12 *Serg. & Rawle* 341, 3 *Serg &
Rawle* 380; 7 *Serg. & Rawle* 140; 15 *Mass.* 471; 4 *Wash. C. C.*
369.

*H. D. Foster* and *J. B. Alexander, contra,* cited 4 *Whart.* 287,
260.

The opinion of the Court was delivered by

GIBSON, C. J.—If the judge intended to charge, as he probably
did, that entry without action does not avoid the statute of limi-
tations, he fell into an inaccuracy.   In our act of 1785, is comprised
the substance of the 21 Jac. 1, c. 16, under which an entry has
always had its common law properties; and these have been
attributed to it, under our own statute, by the ablest men in the
profession.   In 1803, when the statute was about to close its bar
on rights of entry in existence at its enactment, the agent of the
Penn family, under the direction of the late Edward Tilghman,
caused entries to be made into the messuages and lots in York and
Carlisle, for the preservation of the proprietary quit rents.   Indeed
the statute expressly recognises the conservative properties of an

entry alone, by treating it as an alternative for an action.  These properties, however, are purely technical, and not to be favoured. An entry puts the owner, for a time, in actual possession; and as that, in the case of a mixed occupancy, is referrable to him exclusively who has the right, it gives him momentarily the advantages of actual enjoyment; and momentarily displacing the adverse possession of the occupant, it instantly undoes all that his intrusion had done towards the accomplishment of a title.  Yet it must be perceived that this effect is subversive of the purpose of the statute, which is to compel parties to settle their controversies while the evidence of their rights is attainable, and to put a reasonable period to the evils of a contested ownership.  By repeated entries within periods of twenty-one years, a contest might be kept on foot interminably, or till the occupant's proofs had perished with those who could establish them; when, having been deterred from cultivating and improving the land, he might, at last, be left defenceless by the lapse of time, which, instead of having fortified his title as it ought, would be found to have destroyed it.  Such might be the magic of a possession gained by an entry into an obscure corner of the land, which the law would not otherwise protect, and which it would not suffer the party to maintain. Such an entry, however, we are compelled by the terms of the statute to say, is as effective as an action; but we are at liberty, and policy requires us, to hold the plaintiff to strict proof of a formal observance of the ceremony.  What then, is an entry at the common law?

In Dunning *v.* Carothers, 3 *Serg. & Rawle* 385, I was of opinion that claim of title made upon the land, might be left to the jury as evidence of a formal entry—an opinion which I unreservedly retract, substituting, for it, the opinion expressed by Mr Justice Washington, in the fourth volume of his reports, p. 369, when the cause was brought before him by a new ejectment in the circuit court of the United States.  The office of an entry is not to claim title, but to regain a pedal possession; and it has been said that to make it good, the former possessor and his servants must be removed from the land—an assertion qualified by Lord Holt in an anonymous case in 1 *Salk.* 246, who says that an entry without expulsion, makes such a seisin only, that the law will adjudge him in possession who has the right; but that it will not work a disseisin or abatement.  The first bears a resemblance to livery of seisin, the difference being, that the party is invested by his own act in the one case, and by the act of the occupant in the other.  Hence it is, that Lord Coke says: " By the entry of the lessee, he is in actual possession, and then the livery cannot be made to him that is in possession; for *quod semel meum est, amplius meum esse non potest.*"  Co. *Lit.* 49, *b.*  The effect of an entry, it is agreed, depends on the intent of it, expressed by words, or intimated by an act equally significant.  I would say,

[Altemas v. Campbell.]

in a few words, that there must be an explicit declaration, or an act of notorious dominion, by which the claimant challenges the right of the occupant; or it cannot perhaps be better defined than by saying that the entry must bear, on the face of it, an unequivocal intent to resume the actual possession. Let us turn then to the testimony of the plaintiff's agent, to see whether his presence on the land was for that purpose. The defendant called on him, in pursuance of a message, to accept a lease, but no lease was executed. "It was then arranged," said the witness, "that I should go to the house and *see it.* I did so; and again told him about his taking a lease. No agreement was entered into at that time or any other. I did not ask him to leave the place." It is plain from this, that the object of the visit was a compromise which was not effected. He met the defendant on the land by appointment; and not to take or receive the possession of it from him, but to make an arrangement that would settle him in it. Now, what says Lord Coke to such a case? " If the bastard invite the mulier to his house, to see pictures, or to dine with him, or to hawk, hunt, or sport with him, or such like, upon the land descended; and the mulier cometh upon the land accordingly; this is no interruption, because he came by the consent of the bastard, and therefore the coming upon the land can be no trespass; but if the mulier cometh upon the ground of his own head, or cutteth a tree, or diggeth the soil, or take any profit, these shall be interruptions; for rather than the bastard shall punish him in an action of trespass, the act shall amount in law to an entry, because he hath a right of entry." *Co. Litt.* 245, *b.* And again: "If the tenant in an assize of an house, desire the plaintiff to dine with him in the house, which the plaintiff doth accordingly, and so they be both in the house; and in truth one pretendeth one title, and the other another title; yet the law, in this case, shall not adjudge the possession in him that right hath." *Ibid.* 268, *a.* In the case before us, the agent came to the defendant's house by invitation—certainly by preconcert—the object being a visit—of business probably—but still a visit, and not an intrusion; and though he unsuccessfully importuned the defendant to become a lessee, the case was precisely that put by Lord Coke—where one pretendeth one title, and the other another—as one which gives not the possession to him who has the right. However, then, we may differ from the judge in regard to the effect of a formal entry, we entirely concur with him, that there was no evidence of it to be left to the jury.

Judgment affirmed.