# Rose *against* Klinger.

The proceedings in a suit before the Board of Property between R. and B., are not evidence in an ejectment by K. against R.

Facts stated by the Board of Property are not even *primâ facie* evidence of their truth, in the trial of an ejectment.

K., by connecting his warrant with R.'s improvement, when it otherwise would have been void, got a warrant and survey and patent for 350 acres of land. *Held,* that it was error to instruct the jury that R. could not hold against K. without paying his proportion of the expenses of the warrant, survey and patent, when there was evidence that R., by K.'s agreement at the time, was to get 50 acres, clear of all expenses, and R. held possession and paid the taxes for that portion.

This case, which was a writ of error to the Common Pleas of *Schuylkill* county, was argued here by

*Bannan,* for the plaintiff in error, and
*Hieskell,* contra.

The opinion of the Court was delivered by
Burnside, J.—Jeremiah Klinger, the plaintiff below, claimed the 10 acres of land in question by virtue of his warrant for 400 acres, bearing date 29th November 1824, interest from April 1799; a survey on the 26th February 1825 of 400 acres 42 perches, on which the deputy-surveyor returned : " Improvements, small log-house and stable and eight acres of cleared land commenced about three years ago by Doctor John Rose, the son-in-law of Jeremiah Klinger, who requested that his improvements should be included in his father-in-law's survey." There was evidence that John Rose, Jun., moved on the place for which this ejectment was brought, in 1819, that he had commenced his improvement the year before, and continued in possession except a short period, and is still in possession. There is no evidence in the paper-book that Jeremiah Klinger ever had an actual settlement and improvement within the bounds of his survey. He perfected his title on the improvement of Rose. An improvement was necessary to support his warrant and survey, as the warrant was taken out in 1824 and called for interest from April 1799. On the 20th April 1829 Klinger obtained a patent.

Rose gave evidence that he had a wife and children on the land before the survey was made. He had therefore an actual resident settlement. He further proved by Lawrence Shamper that the witness got acquainted with Klinger about nine years ago. Klinger said he had a quarrel with Rose, and said Rose wanted a right

[Rose v. Klinger.]

from him for the land. He said he would not give him one. Witness asked him about it. Klinger said Rose had made an improvement, and after some years there were a couple of others who wanted to slip in and take it from Rose, and he was poor and came to him (Klinger), and he told him he was so, and they would go to Harrisburg and get it all fixed; and "you let me into the improvement, I will give you 50 acres out of it;" and he said if he was to give him a right, it would do him no good; it would be sold from him: *he was to give him* 50 *acres out of the patent clear of all costs.* Witness did not know how the 50 acres were to be laid off. Another witness proved that Klinger told him he and his son-in-law had pretty near fell out. He said Rose was determined to have the right to the land which he had given him. He said he would not give it to Rose. To another Klinger said Rose was to have that, either him or his family. Rose's wife is dead. There was other evidence, but none to controvert the fact that Rose was to have 50 acres with his improvement. After the defendant closed his evidence, the plaintiff, Klinger, gave in evidence a *caveat* entered by Rose against a John Bechtel on the 4th September 1824, against the issuing of a patent to said Bechtel or any person claiming under him, for a tract of land situate in Upper Mahantango township, Schuylkill county, containing 100 acres, more or less, surveyed in pursuance of a warrant to said John Bechtel, dated the 24th October 1823, alleging he had a better title to said land by virtue of an actual settlement and improvement and a long uninterrupted possession by himself and of those under whom he claimed. The plaintiff further showed that Bechtel and Rose came to trial before the Board of Property on the 3d April 1826. The board decided that "in this case it appeared from the evidence before the board that Jeremiah Klinger claimed a large tract of land as part of the property of his father, John Klinger, deceased, and which descended to the said Jeremiah Klinger by law; that he made some improvements and exercised rights of ownership of the land for twenty years past; that in the year 1819 *he permitted his son-in-law, John Rose, to make an improvement on part of the land.* Rose cleared some land, raised grain, built a house, and resided thereon for about two years, and then removed from the land; that after Rose removed from the land Jeremiah Klinger permitted one Jacob Merwine to reside in the house. After Merwine was in possession of the house, he sold or made a conditional bargain with John Bechtel for the sale of some land, recognising the claim of Rose. After this pretended purchase Bechtel applied for and obtained a warrant for vacant and unimproved land; on which warrant he procured a survey to be made and returned of 140 acres 40 perches, leaving out the house built and the land cleared by Rose. Jeremiah Klinger, on the 29th November 1824, applied for and obtained a warrant

founded on his improvement and actual settlement made in the year 1799, on which warrant he procured a survey to be made and returned, including the improvement made by Rose and all the land within the bounds of his original claim." The board decided in favour of Klinger's survey, and ordered the survey on Bechtel's warrant to be rejected.

On this evidence the Court of Common Pleas instructed the jury that from the allegations of Rose the land in question was rented by the plaintiff to a man by the name of Merwine, *as stated by the record of the proceedings before the Board of Property;* and this is the first error assigned. In this case the proceedings of the Board of Property were not evidence against Rose. That was a contest between Rose and Bechtel. The law is well settled that facts stated by the Board of Property as proved before them, are not even *primâ facie* evidence of their truth. The law on this subject, correctly stated, will be found in the opinion of GIBSON, J., in *Carothers* v. *Dunning,* (3 *Serg. & Rawle* 373). When a survey has been made which is supposed to be injurious to another claimant, he ought to file his *caveat. Drinker* v. *Holliday,* (2 *Smith* 255). In this case the *caveat* against Bechtel by Rose was proper; that *caveat* was filed before the survey made on Klinger's warrant. There is nothing in that *caveat* inconsistent with the then title of Rose as it appeared on the trial. If the defendant Rose had read that *caveat,* the plaintiff might have read the decision of the Board of Property to show how it was disposed of; but even then the recital of facts proved before the board·would not have been evidence to affect Rose, unless those facts were proved in court on the trial.

It is further assigned for error that the court below instructed the jury that if Rose went on the land in question in his own right, intending to take it up as vacant and made his improvement, still he could not withhold the possession from Klinger without tendering to him the expenses of patenting the land; and in refusing to submit the fact to the jury whether Rose was to pay any part of the patenting fees. In this instruction, I think, there was error. The learned Judge forgot that unless there was an improvement the plaintiff's warrant was void. By connecting his warrant with his son-in-law's improvement, Klinger got 350 acres of land; and there is some evidence in the cause which ought to have been submitted to the jury that Rose was to get .50 acres clear of all expenses and costs. The jury would have understood this, as the practice of the interior of the State from 1795 down to a late period, was for men who discovered vacant land to place a settler upon it, and each to have a portion of the land so secured. Rose paid taxes for several years for 50 acres. This, although not evidence of title, was some evidence of the extent of his claim. In the case before the court the direction was wrong that the defendant could

not hold the land without paying his proportion of the expenses of the warrant, survey, and patent. All that is essential in the case is embraced in this opinion of the court on these two material points.

Judgment reversed, and a *venire de novo* awarded.