### TOWN OF NEW SHOREHAM *vs.* NICHOLAS BALL *et als.*

A municipal corporation may acquire realty by possession and for other than municipal purposes.

In ejectment wherein the plaintiff's title rested on possession for more than twenty years, the *locus* was a long, sandy waste along the sea shore, and the defendants were mere intruders. The plaintiff, a municipal corporation, had by vote let the *locus* year by year from 1829 to 1875. The court instructed the jury that to show title the town must prove open, adverse, actual, and exclusive possession for twenty continuous years, and "that the votes, though they were evidence of a claim of right on the part of the town, were not sufficient to prove title by possession unless the lessees took actual possession under them; that it was not necessary for the plaintiff town to show that the possession of its lessees was continuous in the sense of their being on the premises all the time; and that if the lessees were in possession of any part of said East Beach (the *locus*) under the votes, it might be considered that they were in possession of the whole for the purpose of acquiring title by possession by the town."

*Held*, that the instruction, in the circumstances, contained no error entitling the defendants to a new trial.

*Held*, further, that passage over the *locus* by the inhabitants of the town to get sea weed or sand, or use of the *locus* for temporary deposit of sea weed, would not amount to an interruption of the possession.

There being evidence to show that the *locus* was known as the East Beach:

*Held*, that it was for the jury to determine whether or not the town let the *locus* by the name of the East Beach.

DEFENDANTS' petition for a new trial.

*Providence, November* 22, 1884. DURFEE, C. J. This is a petition for the new trial of an action of ejectment in which the plaintiff, the town of New Shoreham, recovered a verdict against the defendants, who are the petitioners. The new trial is asked because, as alleged, the court erred in certain rulings and instructions given at the trial, and in refusing certain rulings and instructions requested by the defendants.

The town in proof of title adduced evidence of possession for more than twenty years. It appeared, however, that the premises were not used for municipal purposes, but were part of a larger tract which was for the most of the time in the occupation of tenants of the town. The defendants contended that the town could not acquire title by possession for any other than municipal purposes, and requested the court so to charge, but the court refused so to charge, and they excepted. The cases cited in support of the exceptions do not go to the point that a town cannot acquire land by possession for other than municipal purposes, but only to the point that it is *ultra vires* for a town to purchase land for other than such purposes. We think this is quite a different proposition; for a town cannot purchase land without expending its moneys, and it has no right to expend its moneys, raised by taxation or otherwise for municipal purposes, for other purposes. The acquirement of land by possession does not involve an expenditure any more than does the acquirement of land by deed of gift or by devise; and it has been decided that a gift or devise of land to a town is good, even though the land be given or devised in general terms, and be accepted without any intent to use it directly for municipal purposes. *Inhabitants of Worcester* v. *Eaton*, 13 Mass. 371; *Sargent* v. *Cornish*, 54 N. H. 18; Dillon on Municipal Corporations, § 437. Land so given, even when not wanted for municipal purposes, may be applied by sale or lease to the alleviation of municipal burdens. It is not necessary to suppose that the possession here, which was maintained under a claim of right, began otherwise than rightfully. Indeed the cases hold that if land be acquired *ultra vires* by a corporation, the title passes, nevertheless, and cannot be collaterally impeached. *Chambers* v. *City of St. Louis*, 29 Mo. 543; *Barrow* v. *Nashville & Charlotte T. C.* 9 Humph. 304; *Davis* v. *Old Colony Railroad*, 131 Mass. 258; *Jones* v. *Habersham*, 17 Otto, 174. We do not think the defendants are entitled to a new trial on the ground first assigned.

The second ground assigned for a new trial is the refusal of the court to give certain instructions requested by the defendants, without qualifying them. The plaintiff's testimony tended to show that the demanded premises were part of a strip of unin-

closed land, a mile and a half in length from north to south, lying between an ancient highway or driftway and the sea shore, and bounding east on the sea shore ; that this strip was called the East Beach ; that the town had been in the habit of letting it by vote year by year, from 1829 to 1875, sometimes for pasturage and sometimes for other purposes, and that the lessees had entered upon said strip under these votes and used it for the purposes for which it had been let to them. The court instructed the jury that in order to show title the plaintiff town must prove that it had been in the open, adverse, actual, and exclusive possession for the period of twenty years continuously, and that the votes, though they were evidence of a claim of right on the part of the town, were not sufficient to prove title by possession, unless the lessees took actual possession under them. The court, however, added that it was not necessary for the plaintiff town to show that the possession of its lessees was continuous in the sense of their being on the premises all the time, and that if the lessees were in possession of any part of said East Beach under the votes, it might be considered that they were in possession of the whole for the purpose of acquiring title by possession by the town.

The point particularly pressed by the defendants is this, that the court erred in instructing the jury that " if the lessees were in possession of any part of said East Beach under the votes, it might be considered that they were in possession of the whole for the purpose of acquiring title for the town." The cases cited by the defendants go to show that as against the legal owner no one can acquire title by possession to an entire tract of land by merely entering into possession of and occupying a part of it, unless he enters and occupies under a deed or some other writing which purports to give him title to the whole. There are cases, however, which hold that to constitute an *actual* possession it is enough if the demanded premises are used and occupied as they are fitted from their nature to be used and occupied. *Ewing* v. *Burnet*, 11 Pet. 41; *Cass* v. *Richardson*, 2 Cold. 28 ; *Ford* v. *Wilson*, 35 Miss. 490. The case here finds that the strip of land called, as the plaintiff's witnesses testified, East Beach, which included the demanded premises, was nothing but an open, sandy waste, on which grew a little scanty herbage fit for pasturage, not worth fencing.

It appears that cattle were once seen on the demanded premises, and it would seem that they might have gone there, or anywhere else on the East Beach, whenever they were on the East Beach, if there had been anything to attract them. The case also finds that the East Beach was let year after year by vote in open town meeting; so that though the occupation was not under deed it was as notorious and well-defined as if it had been. The case, therefore, though it may not be within the letter, is within the spirit of the authorities; and it might well be argued that the publicity of the possession was such that no deed or fences were necessary to make it effective even as against a legal owner. But however that may be, the rule which prevails as against the legal owner is not the rule which governs in the case of a mere intruder, for as against a mere intruder proof of prior possession for however short a period affords a presumption of ownership, which, according to some of the cases, is sufficient, and, according to the cases most favorable to the defendants, is sufficient unless rebutted. *Doe dem. Hughes* v. *Dyeball,* 3 Car. & P. 610; *Asher* v. *Whitelock,* L. R. 1 Q. B. 1; *Davidson* v. *Gent,* 1 H. & N. 744; *Doe dem. Bord* v. *Burton,* 16 Q. B. 807; *Nagle* v. *Shea,* I. R. 8 C. L. 224; *Anderson* v. *Melear,* 56 Ala. 621; *Smith* v. *Lorillard,* 10 Johns. Rep. 338, 356. As against an intruder, too, the rule in regard to the possession is less exacting; and it has been held that the exercise of the ordinary control and dominion, even though it might not be of such a character that it would ripen into title as against the legal owner, would prevail against a stranger. *Hunter* v. *Starin,* 26 Hun, 529. This is good sense as well as good law. The petition here does not show any title in the defendants. It is true it alleges that the defendants or those under whom they claim, in common with the other inhabitants of the town, had passed over the open strip which includes the demanded premises, at pleasure, and had used said strip as a place of temporary deposit for sea weed gathered on the adjacent beach, but it does not allege that they had so used the demanded premises. It alleges that they had never been excluded from any use and occupation they had seen fit to exercise in the demanded premises, but it does not allege that they had ever seen fit to exercise any use or occupation there; on the contrary, the jury, under the charge of the

court, must have found that for a period of twenty years, prior to the occupation which caused this action, they were not in possession, if in possession at all, in any other manner than by going upon it, in common with other inhabitants, to get sea weed or sand, or by using it as a temporary tipping place for sea weed. If we go beyond the petition and consult the documents filed with it and used at the hearing, we find that in 1861 certain parties conveyed to Richmond B. Negus two acres of land, bounding it east by the road before mentioned; that in. 1878 Nathan C. Dodge conveyed five adjoining acres of land to said Negus, bounding it east by said road, and that on May 1, 1883, Negus conveyed said seven acres to Edward E. Pettee, who conveyed them to the defendants, and that in their conveyances the eastern boundary given was not said road, but "the Beach," "the East Beach," and "the East Beach so called." It thus appears that the deed to Negus actually excludes the demanded premises, and that it is only under the deeds from Negus and Pettee that the defendants can find the slightest pretext for their claim. But as there is no proof that Negus or Pettee was ever in possession of the demanded premises claiming them as his own, their deeds convey no title to them, and consequently the defendants can be regarded only as mere intruders or trespassers, and, even if Negus or Pettee had ever been in possession, they could not be regarded as the legal owners. On the other hand, we find the town, as long ago as 1765, voting to let the East Beach, and though an interval ensued in which no votes to let appear, we find that in 1829 the letting was resumed and continued until 1875, the said East Beach being treated all the time as a single tract or parcel of land. We think, therefore, that the instruction here complained of contained no error which will entitle the defendants to a new trial.

We do not think a new trial should be granted on the other grounds assigned. We think the testimony going to show that the strip of land between the road and sea shore, including the demanded premises, was called "the East Beach" was properly admitted; for though the strip was not a beach, technically speaking, it might nevertheless be called "the East Beach," and if we are going to do justice we cannot confine ourselves pedantically to our lexicons. In this State the beaches belong to the State and

cannot be let by the towns. The moment it appeared that the strip was called "the East Beach," it was for the jury to say whether it was not let by the town under that designation. We also think that the court did not err in telling the jury that a mere going on the East Beach by the inhabitants of the town for sea weed or sand, or the use of it for the temporary deposit of sea weed, would not amount to an interruption of the possession. An entry, to amount to an interruption, even if we regard the case as a case of adverse possession, must be an entry by the owner for the purpose of interrupting the possession. *Henderson and Wife* v. *Griffin*, 5 Pet. 151, 158. The entry must bear on the face of it an intent to resume possession. *Altemas* v. *Campbell*, 9 Watts, 28; *Hollinshead* v. *Nauman*, 45 Pa. St. 140. Nothing is more common in Rhode Island than for people to cross land lying along the bay to get to and from the shore, and it would hardly be possible for any occupant of such land to prove title by adverse possession, if such crossings would suffice to interrupt it. We decide, therefore, without considering some other points more in detail, that a new trial must be denied and the petition dismissed.

*Petition dismissed.*

*William P. Sheffield & William P. Sheffield, Jun.*, for plaintiff.
*William F. Slocum & Nicholas Van Slyck*, for defendants.