## McCombs *versus* Rowan.

1. The Statute of Limitations is efficacious for a man whose right is undoubted, but who chooses to rely on his adverse possession.

2. Porter *v.* McGinnis, 1 Barr 416, explained.

3. The first act of improvement by a settler, if followed up, gives him from that time a legal title against all the world except the Commonwealth, and an equitable title against her.

4. The questions between settlers are priority of settlement and abandonment.

5. The mere act of making a survey without its being *animo clamandi*, is not sufficient to prevent the running of the statute.

6. The intention with which an entry is made is for the jury.

7. If there be a resident upon the tract on which entry is made he must have notice of the entry.

8. The statute cannot be stopped by a clandestine entry, no matter what the act or the words of the claim with which it is accompanied.

9. If the land be unoccupied, it is not necessary to seek the opposing claimant and give him notice.

November 6th 1868.   Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.   READ, J., absent.

Error to the Court of Common Pleas of *Allegheny county* : No. 35, to October and November Term 1868.

This was an action of trespass *q. c. f.* brought, June 26th 1865, by George McCombs against James M. Rowan.   The pleas were "Not guilty," and "*Liberum tenementum.*"

The plaintiff and defendant owned adjoining pieces of land which originally had been included in one tract.   Through the original tract was a public road called the "Puckety road."   The plaintiff's land was on the south side of the road and the defendant's on the north side.   The *locus in quo* was a strip of ground about forty rods long, and varying from five to fifteen feet in width on the south or plaintiff's side of the road.   The plaintiff had fenced up to the road and was in possession, when the defendant entered and carried away the fence; for which the plaintiff brought this action.   After proving the alleged trespass, the plaintiff gave evidence tending to show a continuous adverse possession since 1835 or 1836.

The defendant then gave evidence that his actual southern boundary, according to his paper title, included the strip in question ; also that for the purpose of proceedings in partition a survey had been made in 1844, commencing at a white-oak, which appeared to be recognised as a corner between the plaintiff and the defendant; by this survey the strip was shown to be within the defendant's tract; also that in 1862 or 1863 the defendant notified the plaintiff to move the fence, and that in 1865 he had the lines again examined by a surveyor, who blocked the white-oak.   He also gave evidence tending to disprove the plaintiff's adverse possession.

[McCombs v. Rowan.]

The defendant submitted a number of points, amongst others the following, which were affirmed by the court (Sterrett, P. J.):—

"4. The Statute of Limitations was intended to protect, not one who enters by right, but a disseisor who enters against all right, and that therefore, to give title by the Statute of Limitations, requires a possession of twenty-one years, and that possession must be actual, visible, peaceable, continued, notorious, distinct and hostile.

"5. If the jury believe from the evidence that James M. Rowan, the defendant, entered upon the portion of the land now in controversy in March 1844, and afterwards for the purpose of making a survey, or the exercise of any other acts of ownership, such entry or entries would bar the running of the statute, because it would break the continuity of the possession and destroy its peaceable character."

The verdict was for the defendant.

The plaintiff took a writ of error, and assigned for error the affirmance of the defendant's 4th and 5th points.

*Kirkpatrick & Mellon*, for plaintiff in error.—The Statute of Limitations will protect a party entering under color of right as well as by disseisin : Criswell v. Altemus, 7 Watts 581 ; Altemas v. Campbell, 9 Id. 30. The entries by the defendant were not *animo clamandi*, and would not stop the running of the statute. But if that had been their effect, he was still barred by the Act of April 13th 1859, § 1, Pamph. L. 603, Purd. 655, pl. 14, which requires an ejectment to be commenced in one year after the entry.

*B. F.* and *A. G. Lucas*, for defendant in error.—The first part of the 4th point is sustained by Porter v. McGinnis, 1 Barr 416 ; Hawk v. Senseman, 6 S. & R. 21 ; Hughs v. Pickering, 2 Harris 297 ; Criswell v. Altemus, Altemas v. Campbell, *supra*.

The opinion of the court was delivered, January 5th 1869, by

SHARSWOOD, J.—This was an action of trespass *quare clausum fregit* by the plaintiff in error, who was the plaintiff below, against the defendant. The pleas were not guilty, and *liberum tenementum*. The parties owned adjoining tracts of land through which ran a road called the Puckety road. It was contended by the defendant, that the true line between the properties began at a white-oak corner and ran south of the road, leaving a strip of land between, about 40 rods in length and from 5 to 15 feet in width. This strip was the *locus in quo*. On the other hand, the plaintiff claimed up to the line of the road by an adverse possession of more than twenty-one years, at the time that the trespass was committed ; in other words, that whatever was the true state of the

question of boundary, he had acquired a perfect title under the statute, and that the entry of the defendant was therefore a trespass, and not justified by the evidence under the plea of *liberum tenementum*. With the merits of the controversy we have nothing now to do; our duty is confined to an examination of the errors assigned.

The 1st is, that the court below erred in affirming the defendant's 4th point, " that the Statute of Limitations was intended to protect not one who enters by right, but a disseisor who enters against all right; and that therefore to give title by the Statute of Limitations requires a possession of twenty-one years, and that possession must be actual, visible, peaceable, continued, notorious, distinct and hostile."

If this is to be considered as a single distinct proposition, then it is a perfectly true conclusion, though drawn apparently from false premises. It is indeed difficult to see the connection between the first and the latter part of the point, or why it is that the necessity of adverse possession for twenty-one years, of the character described, follows as an inference from the alleged intention of the statute, to protect not honest claimants but dishonest squatters. It is a plain illustration of what logicians call a *non sequitur*. There is no middle term to connect the premises with the conclusion. If, however, the point includes two distinct propositions, the affirmance of the first was an error. It in effect instructed the jury, that if the plaintiff had originally entered and occupied the strip of land in dispute under his paper title, his adverse possession for more than twenty-one years would not avail him, if it should turn out eventually by measurement that he was mistaken, and that his patent or deed did not embrace the *locus in quo*, or if it did that somebody else had an older and better right to it. At all events, a jury of plain men, not acquainted with the subtleties of logic, would naturally have so understood it—would not have regarded the first part of the point as a reason given for the second, and therefore immaterial whether it was right or wrong. It certainly requires no argument or authority to prove that it was wrong. The Statute of Limitations is a statute of repose to the community—of peace to the courts. *Interest reipublicæ ut sit finis litium*. It is meant to be efficacious, and is efficacious for the man whose right, if he chose to produce and rely upon it, is undoubted, but who prefers to avoid all questions which might arise by not exhibiting it, but relying on his undisturbed possession for the prescribed period. It is sometimes the easiest and most inexpensive process. Indeed there seems more reason and justice in affording the advantage of the statute to one who enters by right, rather than to a disseisor who enters against all right. It is maintained, however, by the counsel for the defendant that the law, as enunciated in the first part of the

[McCombs v. Rowan.]

point, is stated in the language of C. J. Gibson in Porter v. McGinnis, 1 Barr 416. It is not improbable that the point was copied from the opinion in that case, but with a material variation, and under an evident misapprehension. There the question was whether a person who had entered on land already appropriated by warrant and survey, and designated his lines by the lines of surrounding surveys, and held adversely by these lines till the period of limitation had elapsed, could also hold the adjoining unenclosed woodland by the same title. It was urged that none but a settler on unappropriated land could have an adverse constructive possession: to which the Chief Justice replies: "But in what part of it does the statute speak of settlers? It was intended not for settlers who enter by right, but for disseisors who enter against all right." The copyist has struck out "settlers" and substituted the word "one." It may have been meant by the Chief Justice to say, that the benefit of the statute was not confined exclusively to settlers—who entering on unappropriated land for the purpose of settlement enter by right—as had been contended; in other words, by the insertion of a single word—the omission of which may have been a mere clerical or typographical error—"It was intended not *only* for settlers who enter by right, but for disseisors who enter against all right." It is more probable, however, that he meant just what he said. The marked characteristic of the mind of C. J. Gibson was a fondness for generalization. A settler, except in very rare instances, has no occasion to invoke the Statute of Limitations. The first stroke of the axe, or the first furrow of the plough, properly followed up, gives him from that time a legal title against all the world but the Commonwealth, and an equitable title against her. With other settlers contending for the same tract, the questions are priority of settlement and abandonment. Still as to adjoining settlers or warrant-holders, on a question of boundary or interference, the Statute of Limitations may be and frequently is called in. The dictum of the Chief Justice, though generally, was not universally, true. But when you strike out the word "settlers," and substitute for it a word which means "all persons," you extract from it the very marrow of it, and it ceases to be in any, even a confined sense, true. We think, therefore, that the court fell into an error in affirming without qualification the defendant's 4th point.

The 2d error assigned is, that the court below erred in affirming the defendant's 5th point, "that if the jury believe from the evidence that James M. Rowan, the defendant, entered upon the portion of the land now in controversy in March 1844 and afterwards, for the purpose of making a survey, *or* the exercise of any other act of ownership, such entry or entries would bar the running of the statute, because it would break the continuity of the possession, and destroy its peaceable character." What will

9 P. F. SMITH—27

constitute such an entry as will suspend the statute, has been considered in several cases in this court. In Altemas *v.* Campbell, 9 Watts 30, Chief Justice Gibson states the law in this language: "The effect of an entry, it is agreed, depends on the intent of it, expressed by words, or intimated by an act equally significant. I would say, in a few words, that there must be an explicit declaration, or an act of notorious dominion, by which the claimant challenges the right of the occupant; or it cannot perhaps be better defined than by saying that the entry must bear on the face of it an unequivocal intent to resume the actual possession." In Miller *v.* Shaw, 7 S. & R. 129, it was held that an entry on land for the purpose of making a survey, if done *animo clamandi*, is sufficient; but if the intent be doubtful, it is a question for the jury. So in Ingersoll *v.* Lewis, 1 Jones 212, there was an actual entry on the land by the agent of the owner with the avowed object of claiming the land, accompanied with an unequivocal act of dominion or ownership by making a survey, with the knowledge and assent of the person in possession; and it was decided that it was the duty of the court to instruct the jury that if they believed these facts they tolled the statute. And again in Hood *v.* Hood, 1 Casey, 417, it was held that entering and surveying off a part of the tract for another, would be such an act of notorious dominion as would arrest the running of the statute. In Hoopes *v.* Garver, 3 Harris 517, where there was evidence of an entry and survey of a whole tract, including the part in dispute, it was held that these acts, together with the declarations of the parties, should have been submitted to the jury.

It is evident, however, that the mere act of making a survey, without it was *animo clamandi*, is not sufficient. In the absence of any evidence of its object and purpose, a jury might well infer an intent to claim dominion; but it must of necessity, as all other questions involving intention, be left to the jury to determine, upon a consideration of all the circumstances. With what particular design the survey referred to in this case was made, does not very distinctly appear in the printed testimony, nor whether the plaintiff was present, or had notice of it. Yet by affirming, and without qualification, the defendant's 5th point, that an entry for the purpose of making a survey would bar the running of the statute, the question of the intent of the act—whether it was *animo clamandi*—was entirely withdrawn from the jury. It cannot be doubted that it may have been *diverso intuitu*, simply to ascertain other lines and corners on the adjoining tract, of which they were about to make partition. Besides, nothing is said in the point about notice to the possessor, if there was one. It appears to have been assumed in all the cases, that if there be a resident on the tract he must have notice of the entry. A man

[McCombs v. Rowan.]

cannot stop the running of the statute by a clandestine entry in some obscure corner of a farm, no matter what the act, or what the words of claim with which it is accompanied. If indeed the land be at the time in the occupancy of no one, it is not necessary that the owner should seek out the opposing claimant and give him notice. "If, however," said Mr. Justice Coulter, in Hinman v. Cranmer, 9 Barr 40, "any one had been resident on defendant's land, or if any one had intruded his fields over the line, it would have been necessary to give notice to the occupant that the entry was with a view to assert title and ownership and resist the claim of the intruder." Whether at the time of the alleged entry, the plaintiff's fence ran along the line of the road so as to give him the possession by intruding his fields over the line, was for the jury. It is to be remarked that in 1844 there was no statute limiting the effect of such an entry, as has been since wisely provided by the Act of April 13th 1859, Pamph. L. 603. Before that act, by an entry at or near the close of the twenty-one years, the period would have been prolonged for another period of twenty-one years, and so from time to time for ever. There is so much the more reason for holding as law, then, that wherever there was an occupant of the land, or one who had intruded the fields of his plantation over on to the land claimed, he should be notified of the entry; so as to be enabled to assert his title against the claimant by an action of trespass, or admitting him to have regained possession by his entry and notice, by an ejectment: otherwise his witnesses may die, his papers be lost or destroyed, his corner-trees and land-marks decay and perish, and thus his just title be swept from him, instead of being confirmed and strengthened, as it ought to be, by lapse of time and undisturbed possession.

There is another defect in the point, which leaves it imperfect in its application to the evidence in the case, and which, as the cause is to go back, ought to be noticed. The survey, according to the point, was in March 1844; according to the evidence of the surveyor, March 11th 1844. This action was commenced June 26th 1865, after a lapse of twenty-one years, three months and fourteen days. But when precisely the trespass for which the action was brought was committed, does not appear in the evidence. If at the time of the trespass by the defendant and the removal of the fence, more than twenty-one years of exclusive adverse possession subsequent to the day of the alleged entry in 1844 had been held by the plaintiff, his title to maintain this action would be undoubted. The jury might reasonably have inferred from the unqualified affirmance of the point, that an entry at any time after the adverse possession commenced would have the effect to stop the running of the statute altogether. But besides this, the court instructed the jury, when they affirmed the defendant's 5th point, that if the entry was for the purpose of "the exercise of

[McCombs *v.* Rowan.]

any other acts of ownership," such entry would bar the running of the statute. The law may be correctly stated, but there was nothing in the evidence to which it was applicable. I have looked carefully through this record, but in vain, for evidence of any other act of ownership except the survey, to which reference is specially made. To submit a question in that way to the jury, without some evidence to support it, was erroneous: Urkett *v.* Coryell, 5 W. & S. 60; Switland *v.* Holgate, 8 Watts 385; Kerr *v.* Wright, 1 Wright 196.

Judgment reversed, and *venire facias de novo* awarded.