## Knauer, Appellant, v. McKoon.

*Practice, C. P.—Trial—Evidence—Depositions.*

Where a portion only of a deposition is offered in evidence, and upon objection to the offer, the trial judge suggests that the whole deposition should be offered, and this is done, but only the portion first offered is read, and binding instructions are given for defendant, the whole of the deposition becomes a part of the record, and is before the judge for consideration in his final ruling.

*Principal and agent—Ratification—Possession—Laches—Statute of Limitations.*

Where an owner of rails is indebted to the owner of land upon which the rails had been deposited, and the owner of the land enters into an agreement with a person who assumes to be the agent of the owner of the rails and is an agent for certain purposes, by which the owner of the land takes the rails for a siding and credits the debt due him with a certain amount, which is the fair value of the property, and the owner of the rails never takes any steps to assert his title to them, an execution creditor of the owner of the rails cannot, after eight years, assert title to them.

Argued Nov. 20, 1901. Appeal, No. 138, Oct. T., 1901, by plaintiff, from judgment of C. P. Chester County, April T., 1900, No. 2, on verdict for defendant in case of Davis Knauer v. D. B. McKoon. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Feigned issue to determine title to certain rails. Before BUTLER, J.

The facts appear by the opinion of the Superior Court.

The court charged in part as follows :

In the opinion of the court the evidence presented by the plaintiff does not establish his title to the rails on the siding No. 2, that is, the other siding. Those rails were put down at a time subsequent to the completion of the construction of the Delaware River & Lancaster Railroad, in which construction the evidence might warrant you in finding, possibly, that Mr. Potts was the agent of McDonald ; these rails were put down on siding No. 2 sometime after that road was substantially completed and in operation, so that in our judgment, Mr. Potts, though he had been the agent of McDonald in the construction of the Delaware River & Lancaster Railroad, certainly was not his agent, so far as the evidence discloses, for any other purpose, and could not appropriate McDonald's property under any circumstances without McDonald's knowledge. If it be a fact that an agent constructing for a principal under any circumstances, without the principal's assent or knowledge, may appropriate the principal's property—not money but property—to the payment of his debts incurred in the enterprise, we feel clear that he could not do so after the enterprise is concluded. I say if he can do it at any time under any circumstances, he

cannot do so without the knowledge of one who was his principal, after the transaction out of which the indebtedness arose and in which he was agent, has for some time been substantially completed.

Entertaining this view, under the evidence, we are of the opinion that the plaintiff has not established his title to the rails on siding No. 2. The defendant is therefore entitled to a verdict for the value of the rails on siding No. 2 ; and it is agreed that the value of these rails is $1,188. Your verdict will therefore be in favor of the defendant for $1,188.

Verdict and judgment for plaintiff for $1,188.  Plaintiff appealed.

*Error assigned* was the charge of the court.

*D. Smith Talbot* and *Thomas W. Pierce*, for appellant.—The long acquiescence with the evidence of such facts as are in this case, from which knowledge could be imputed to McDonald, would constitute a ratification of Potts' act in the sale of the material, even if the act was originally beyond his authority : Straub Brewing Co. v. Bonistalli, 5 Pa. Superior Ct. 415 ; Bredin v. DuBarry, 14 S & R. 27 ; Hotchkiss v. Roehm, 181 Pa. 65 ; McCulloch v. McKee, 16 Pa. 189.

But if there was nothing more in the case, than the turning over of these rails, in the siding No. 2 in 1891, by the agent, for the payment to the plaintiff of his principal McDonald's debt, the acquiescence of the latter in the matter for nearly nine years ought to be the highest evidence of his knowledge and assent to the transaction. By the lapse of so long a time he has lost all right to assert any claim or title to this property, and the defendant must stand in the same situation as McDonald as respects it: Moore v. Luce, 29 Pa. 260 ; Campbell v. Holt, 115 U. S. 620.

*Alfred P. Reid*, with him *C. W. Talbot*, for appellee.—He who seeks to establish an agency must not only prove the fact of agency, but the extent of the powers of the agent: Central Penna. Telephone, etc., Co. v. Thompson, 112 Pa. 118 ; Whiting & Co. v. Lake, 91 Pa. 349 ; Union Refining, etc., Co. v. Bushnell, 88 Pa. 89.

OPINION BY ORLADY, J., March 14, 1902:

D. D. McKoon issued an execution on a judgment he held against Neil McDonald and levied upon certain rails, spikes, ties, etc., on two railroad sidings located upon the lands of Davis Knauer. All of the property was claimed by Knauer and a feigned issue was framed to determine the title to it. On the trial of this issue the jury was directed by the court to return a verdict for the defendant for the reason, that the plaintiff had not established his title under the evidence.

It appears that Neal McDonald was identified with and represented a syndicate of parties who were interested in the construction of a railroad which was not a financial success, and that subsequent to the laying of the track the property in dispute became a part of two sidings which connected quarries of Davis Knauer with a railroad which gave him an outlet. The principals in the enterprise were New York parties and all the work on the ground was done under the superintendence of George Potts. On the trial it was conceded that the rails, etc., on siding No. 1 were the property of the plaintiff in the issue, and that feature of the case was not pressed. The plaintiff in the issue claimed title under " Neal McDonald through George Potts, his agent," and his right to recover depended primarily upon the authority of Potts to dispose of the rails, etc. McDonald was indebted to Knauer in about $5,000, for lumber, posts, ties, etc., used in the construction of the road; and, as claimed by the plaintiff, an arrangement was made with Potts by which the private sidings of Knauer were changed and extended by using the rails in dispute, and labor expended to the value of $1,500, and that sum was credited by Knauer on his account against McDonald. This credit is noted in one item, viz: " By putting in tracks at quarries, $1,500," being $500 for siding No. 1, and $1,000 for siding No. 2. McDonald was never on the ground, and it is difficult to understand by inspection of this record why the title of the claimant to siding No. 1 is conceded by the defendant, and the court is justified in holding that the evidence presented by the plaintiff did not establish his title to siding No. 2, inasmuch as the title to either or both was through the one source, George Potts, representing McDonald. No separate title in Potts to either appears by the record. The roadbed was completed in the spring

of 1890 or 1891 at which time Knauer claims to have purchased the rails, and they were confessedly the property of McDonald when they were placed in the sidings. The execution of McKoon was issued to No. 48, January term, 1900. During the intervening years the property in dispute was in the possession of Knauer in his sidings. The testimony of McDonald was taken under a commission and on the trial the counsel of Knauer offered in evidence the answer to the fourth interrogatory. Objection was made on the ground that it was only a part of the deposition; when, at the suggestion of the trial judge, the whole deposition was offered in evidence but only the fourth interrogatory and its answer were read. It is contended by appellee that no other part of the deposition is before the court. To this we cannot agree under the facts of this case. The case was not submitted to the jury, as the verdict was directed by the trial judge for the defendant; the deposition was offered as a whole at the instance of the court and was before him for consideration in his final ruling.

The title asserted by the plaintiff had its inception in the transaction with George Potts and he contends that it has ripened into a perfect title even if Potts was not the fully accredited agent of McDonald to sell the property, by reason of the laches of McDonald in not asserting claim or title to the property for over eight years. From the testimony it appears that a part of the unused rails were given by Potts to another creditor (Benjamin) as security for a debt about the time Knauer received his, and were subsequently sold by the creditor to pay the debt, which was ratified by McDonald; also that the balance of rails had been in the Knauer sidings since 1891, without objection or demand by McDonald. It is true that the rails were necessary for the use of a siding connected with a railroad in active operation, but these particular rails were under the control of Knauer. They were on his private siding, he had them placed there and could have sold them and substituted others for them. The railroad company had no title to them. Nor did—so far as the record shows—any other person claim them until in 1900. It was for the jury and not the court to say whether McDonald by permitting the rails to remain in the siding for more than eight years without objection or demand for them had or had not ratified and approved the deal made by

Potts by which the rails became the property of Knauer, and McDonald's debt to Knauer was credited with $1,500, the fair value of the property.

Delays are generally dangerous and when the possession of such property is voluntarily abandoned and it is permitted to be used under a claim of right continuously for more than eight years without explanation or excuse there is such a mixture of intent and circumstances as to make it a question for the jury. Possession has always been a means of acquiring title, and the reason which supports the statutes of limitations is the same in regard to personal as to real actions. The purpose is to compel the decisions of controversies while transactions are fresh and the evidence of them attainable. These statutes secure repose to the community and peace to the courts, protect the occupant of land and the possessor of personal property, not for any merit of his own, but for the demerit of the owner in delaying his action beyond the period assigned for it, when papers are lost, facts forgotten and witnesses dead. They have received the sanction of a favorable construction by the courts in many cases: Altemus v. Trimble, 9 Pa. 232; Pipher v. Lodge, 16 S. & R. 233; McCombs v. Rowan, 59 Pa. 414; Campbell. v. Holt, 115 U. S. 620, Book 29, L. C. P. Co. ed. 483; Trickett on Limitations.

If McDonald could not recover the possession of the rails on account of the bar of the statute it would follow that his execution creditor could not.

According to the principle which has been adopted as analogous to the statute of limitations, applicable to adverse possession of land, coupled with the advantage to McDonald, in paying in part his debt to Knauer, and the control of Potts over the whole business, a jury would be warranted in inferring that the original sale was authorized or ratified by the owner of the property and this case should have been passed on by a jury.

The judgment is reversed and a venire facias de novo awarded.