## Trexler, Appellant, v. Africa.

*Land law—Unseated land—Possession—Trespass.*

Title to unseated land carries with it a sufficient right of possession to enable the owner to sustain an action of trespass.

*Tax sale—Tax title—Payment of taxes—Redemption of land.*

In an action of trespass where the defendants claim title under a tax sale, the plaintiff testified that on a certain date he went to the treasurer's office at the county seat, and stated that he desired to pay the taxes on the land in question, and also on another tract; that the treasurer examined his books, made a calculation and stated to the witness the amount of the taxes due and unpaid; that he then gave his check to the treasurer for said amount and was given a receipt; that subsequently his house was destroyed by fire and the check and the receipt were burned. At the time of the trial the county treasurer was dead. The books of the treasurer did not show the payment of the taxes on the land in question. The records of the bank showed that the check given by the plaintiff was only sufficient to pay the taxes on the other tract referred to by the plaintiff. There was no contradiction by any other witness of the plaintiff's testimony. *Held*, (1) that there was no error in permitting a witness to testify to the precise amount of the check given by plaintiff to the treasurer; (2) that in such a case it was not competent to prove a custom of the treasurer's office as to the form of receipts given for taxes on unseated lands; (3) that if plaintiff asked to pay the taxes on both tracts, and the treasurer gave him an

amount, and he paid it, he had a right to rely on the correctness of the treasurer's work, and he was not guilty of laches if he failed to examine the receipt and books, and figure the amount of taxes himself; (4) that if plaintiff's testimony were believed there was no valid tax sale, and plaintiff was not called upon to redeem the land after the sale; (5) that the jury should have been instructed that if they believed the testimony of plaintiff, then their verdict should be in his favor.

When a case depends upon oral testimony, such testimony must be submitted to the jury.

An action of trespass for injuries to land is not an action for the recovery of the land within the meaning of sec. 3 of the Act of April 3, 1804, 4 Sm. L. 201, which provides that "no action for recovery of said land shall lie, unless the same be brought within five years after the sale thereof for taxes as aforesaid." The act of 1804 has no application where the title based upon a tax sale is void.

Argued Oct. 24, 1906. Appeal, No. 139, Oct. T., 1906, by plaintiffs, from judgment of C. P. Huntingdon Co., Sept. T., 1903, No. 33, on verdict for defendants in case of Jacob F. Trexler and John L. Trexler v. J. Murray Africa and John Edelblute. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for injuries to land.

The opinion of the Superior Court states the case.

When the plaintiff was on the stand the following offer was made:

Mr. Waite: I propose to show that the witness did not know that the John Patton tract had been sold on June 13, 1898, until more than two years thereafter, when it was too late to redeem it, for the purpose of showing good faith on the part of the plaintiff.

Mr. J. S. Woods: That is objected to as immaterial and inadmissible. It was the duty of the plaintiffs if their land was sold to redeem it and to see that they were sold, and they cannot plead that negligence of duty here.

The Court: Objection sustained. Evidence rejected. Bill of exceptions sealed for the plaintiffs. [1]

Mr. Waite: I propose now to prove by the witness on the stand that he was informed by J. D. Kennedy of the fact that these two tracts were advertised by the county treasurer of Huntingdon county for sale on June 13, 1898, that this

notice came to him some two weeks prior to the time when the property was sold.

Mr. Bailey: That is objected to. The court has already permitted witness to testify in chief that he had information that the land involved in this controversy was advertised for sale; the fact of the source of that information, from whom it was derived, is immaterial.

The Court: We do not think it is evidence. Objection overruled. Bill of exceptions sealed for plaintiff.

Third assignment of error. The court erred in rejecting the following offer in evidence.

Andrew Shuldt, witness on the stand.

Mr. Waite: I propose to prove by the witness on the stand that J. L. Trexler came to the office of the county commissioners of Huntingdon county prior to the treasurer's sale of the John Patton tract in 1898, and inquired as to the place of paying the taxes and was directed to the county treasurer's office. This for the purpose of showing good faith on the part of the plaintiff, John L. Trexler, who has testified that he made an honest effort to pay the tax.

Mr. Bailey: It is objected that anything done or said by the witness to any person other than the county treasurer is inadmissible.

Mr. J. S. Woods: We propose to prove by Mr. Spyker that the fee for advertising a tract of land at treasurer's sale is fifty cents, to be followed by proof that the taxes on the Smith tract amount to a certain amount of money, to which was added fifty cents; that John L. Trexler gave a check to Henry Musser which was deposited in the Union National Bank, on the First National Bank of Lancaster, for the exact amount of the taxes on the William Smith tract, with fifty cents added; for the purpose of contradicting John L. Trexler when he said he paid all the taxes that were demanded of him.

Mr. Waite: We object:

1. That John L. Trexler did not testify that he paid the taxes on the John Patton and the William Smith; he testified that he went to the county treasurer's office and asked the county treasurer for all the taxes due on the John Patton in Walker township and William Smith in Porter, and as the county treasurer gave him the amount and that he then and

there gave him a check for the amount demanded and therefore the offer does not or cannot contradict John L. Trexler in any respect.

2. The evidence is incompetent and inadmissible.

The Court: John L. Trexler having testified that he went to the county treasurer's office in company with Peter Kean and there transacted business with the county treasurer, Mr. Musser, and having testified that both parties are dead, we think it is evidence and we overrule the objection, admit the evidence and seal a bill of exceptions for the plaintiff. [4]

W. G. Focht, a witness called on behalf of the plaintiff, sworn.

Mr. J. S. Woods: We propose to prove by the witness on the stand that he is bookkeeper in the Union National Bank; that he was bookkeeper in June, 1898; that it was his duty as bookkeeper to list all checks and mail all letters containing checks on foreign banks; by foreign banks means outside of the borough of Huntingdon, and that on June 9, 1898, there was placed by Henry Musser in the Union National Bank of Huntingdon, check of the Trexler Stave & Lumber Company in favor of Henry Musser, treasurer, on the First National Bank of Lancaster, for $48.13, this being the exact amount of the taxes on the William Smith tract for 1895 and 1896, with fifty cents added for advertising the tract; it having been testified by Mr. Africa that this check is lost; for the purpose, as stated in a former offer, of contradicting John L. Trexler, and for the additional purpose of corroborating the record of the treasurer's office on the John Patton tract, which states that the taxes were not paid on June 2, 1898.

Mr. Waite: It is objected that John L. Trexler has already testified that he went to the treasurer's office to pay the taxes due on the John Patton in Walker and the William Smith tract in Porter townships, that he asked the county treasurer for all the taxes due thereon, that the county treasurer gave him the amount, and he gave him a check for all the taxes due thereon as stated to him; that he has testified that he had no recollection of the amount or as to whether the amount was the full amount due on the Smith and Patton tracts and therefore the offer does not in any respect contradict John L. Trexler.

2. The offer does not propose to follow it by proof that this was the identical check given by Trexler & Company,

who were then doing business in this county for the payment of the taxes.

3. Incompetent and inadmissible.

The Court: Objection overruled. Evidence admitted. Bill of exceptions sealed for the plaintiff. [5]

Mr. J. S. Woods: I desire now to offer Land Ledger P, page 298, being the record of the assessment of the taxes of 1895 and 1896 on the L. L. Fritch tract, and the payment, on June 2, 1898, by check of John L. Trexler, county, school and road taxes, 1895 and 1896, amounting to $47.63, which added fifty cents, charged for advertising the tract of treasurer's sale, makes the sum of $48.13, the exact amount of the check which M. Focht testified passed through the bank; for the purpose of contradicting John L. Trexler and sustaining the record of exceptions sealed for plaintiff.

Mr. Waite: That is objected to for the reason that the record does not show that the county treasurer charged any fee of fifty cents such as is embraced within the offer and there is no specific testimony offered in the case that such charge was made to Mr. Trexler.

The Court: Objection overruled. Evidence admitted. Bill of exceptions sealed for plaintiff. [6]

Thomas Musser, a witness called on behalf of the defendants, sworn.

"Q. (By Mr. Woods) Mr. Musser, who was your father? A. Henry S. Musser. Q. Was he in 1898 treasurer of this county? A. Yes, sir. Q. Were you deputy treasurer? A. Yes, sir. Q. Were you in the office of the treasurer on June 2, 1898? A. Yes, I think I was. Q. Mr. Musser, when taxes were paid for unseated lands, did they always give receipts? A. Yes, sir. Q. In these receipts would they mention the name of the contract?"

Mr. Waite: I object: the practice of the office of the county treasurer or what the witness generally did in that office, is incompetent to affect the rights of the plaintiff.

The Court: Objection overruled. Evidence admitted. Bill of exceptions sealed for the plaintiffs.] [7]

The court charged in part as follows: ·

[If you find that he did not go there with any intention of

paying this tax or that if he went there and after having paid his tax, he was guilty of laches himself by not looking at it, if you believe this, and that it was not an honest effort on the part of the plaintiff, then your verdict should be for defendant.] [8]

[Henry Musser, the treasurer, is dead; Peter Kean, who accompanied Mr. Trexler to the treasurer's office, according to the testimony of Mr. Trexler, is also dead. You have his statement, which, as I have said already, is evidence; but with this evidence must be taken into consideration all that transpired at that time, the entries in the records of the court, the entries in these books, the receipt, if it is there; if not, then such other evidence as is explanatory of the receipt, the check, the amount of money that was paid, the amount of taxes that were assessed, these are all to be taken into consideration.] [9]

[You are to take into consideration the fact that the tax was not paid and that it was not paid for some time after. These are all matters to be considered by you in arriving at your verdict. Whose fault was it that this land was sold for taxes? Was it the treasurer of the county of Huntingdon's fault that these taxes were not paid and that this land was advertised? I may say here, that the way these lands are advertised is by advertising in a newspaper the name of the tract of land, the number of acres, where it is located and situated, and you are to take into consideration these things and that the land was not redeemed for two years.] [10]

[Now, gentlemen of the jury, as I have already said to you, the only verbal testimony we have is the testimony on the part of Mr. Trexler, one of the plaintiffs. That is contradicted by the records of the court. But the Superior Court has said to us that is evidence which should be received in order to enable the jury to determine whether or not there was a mistake or fault or a neglect on the part of the officials doing the business.] [11]

[Now, gentlemen of the jury, take this case and decide it from the evidence and the evidence alone. We have the evidence on the part of the defendants; he offers land ledger, P, page 448, which shows that in 1895 this land was assessed to McNeil and Harris and on June 13, 1898, by draft of J. Simpson Africa, that the tax was paid for this year on this very

land; and we have also the record of the treasurer's deed made to this defendant, J. Murray Africa.    All these matters are to be considered by you in arriving at your verdict.] [12]

[Every person has notice of the tax sales ; it is published in the weekly papers and everybody is supposed to have notice and for that reason the law says they are entitled to two years in which to redeem the land, unless there is some mistake made, and that is the question for you, gentlemen of the jury. If you believe that what transpired at that time was written in the records, and that they are correct, then the plaintiffs cannot recover.] [13]

[But, you must be satisfied first that this plaintiff made an honest effort to go and pay his taxes and, when he went to the treasurer's office, it was his intention to pay them all, on this land, that intention must be arrived at from all the circumstances which surround this case, including the entries in the record, including the .sale, the delivery of the deed and the time that elapsed between the sale and the time the deed was given and the fact that there was no redemption, all the circumstances surrounding the case.] [14]

Plaintiff presented this point :

Under all the evidence in the case, the verdict of the jury must be for the plaintiff. *Answer :* Refused. [15]

· Verdict and judgment for defendants.    Plaintiffs appealed.

*Errors assigned* were  (1–7) rulings on evidence, quoting the bill of exceptions; (8–15) above instructions, quoting them.

*H. H. Waite,* with him *C. C. Brewster,* for appellants.

*W. H. Woods,* with him *Thomas F. Bailey* and *James S. Wood,* for appellee.

OPINION BY MORRISON, J., April 15, 1907 :

This is an action of trespass brought for the recovery of damages for an unlawful entry, as alleged by the plaintiffs, upon a tract of unseated land owned by them in Walker township, Huntingdon county, and carrying away therefrom a quantity of sand.    The land was not in the actual possession of either of the parties, but it is the settled law in Pennsylvania

that title to unseated land carries with it a sufficient right of possession to enable the owner to sustain an action of trespass.

This case was tried once before and the court directed a verdict for defendants, and entered judgment thereon, which on appeal to this court was reversed with a new venire : Trexler, Appellant, v. Africa, 27 Pa. Superior Ct. 385.

A careful examination of the testimony, the rulings and charge of the court and the assignments of error, forces us to the conclusion that the present judgment must be reversed, and the case sent back for still another trial. It is conceded that the plaintiffs made a prima facie showing of title to the land, on which the alleged trespass was committed, and without more, they would have been entitled to a verdict. The defendants then replied by showing an assessment and levy of taxes for the years 1895 and 1896 on said land ; that the same were returned to the treasurer of the county and appearing to be due and unpaid for more than one whole year, the land was duly sold at treasurer's sale on June 13, 1898, to J. Simpson Africa and J. Murray Africa, and a deed therefor duly executed and delivered to them thereafter. The books of the treasurer's office did not show any redemption from this sale. At this stage of the case, in the absence of additional evidence, the court would have been warranted in directing a verdict for the defendants. The plaintiffs then rebutted this prima facie tax title by the testimony of John L. Trexler to the effect that on June 2, 1898, he went to the treasurer's office in Huntingdon county and stated that he desired to pay the taxes on the land in question, known as the John Patton tract, in Walker township; and also on the William Smith tract in Porter township ; that the treasurer examined his books, made a calculation and stated to the witness the amount of the taxes due and unpaid ; that he then gave his check to the treasurer for said amount and was given a receipt ; that subsequently his house was destroyed by fire and the check and the receipt were burned.

It is a conceded fact that the books in the treasurer's office show that on June 2, 1898, John L. Trexler paid the taxes on the William Smith tract in Porter township, but the books do not show that he paid any taxes on the John Patton tract in Walker township on that date. Mr. Trexler does not testify that

he attempted to pay the taxes on any other day, except June 2, 1898. The county treasurer had died before either of the trials of this case, and, therefore, the positive oral testimony of John L. Trexler that he attempted to pay the taxes on both tracts, and supposed he had done so, is not contradicted by any other witness nor by anything except the presumptions arising from the condition of the treasurer's books and the sale and deed to the Africas.

It is argued earnestly by the counsel for the defendants that they proved from the records in the bank upon which the check was drawn that the amount of it was only sufficient to pay the taxes on the William Smith tract, with fifty cents added to pay for the treasurer's advertisement. It is also argued that John L. Trexler did not tell the truth when he said the check and receipt were destroyed by fire. To these contentions it may be said : First, it is beside the point to show that the check was not for a sufficient sum to pay the taxes on both tracts because if Trexler asked to pay on both tracts it was the treasurer's duty to inform him of the correct amount, and if he made a mistake, and only gave the amount of taxes due upon one lot, and Trexler was honestly endeavoring to pay upon both, and supposed he did so pay, then the mistake of the treasurer would be in law equivalent to a payment by Trexler on the John Patton tract, and no treasurer's sale could thereafter be made for the nonpayment of the taxes for 1895-6 : Dietrick and Wilson v. Mason, 57 Pa. 40 ; Price v. Mott, 52 Pa. 315 ; Bubb v. Tompkins, 47 Pa. 359 ; Pottsville Lumber Company, Appellant, v. Wells, 157 Pa. 5. But it is unnecessary to dwell on this point. The defendant's counsel and the court concede, as they must under the law, that if John L. Trexler made an honest effort to pay the taxes, and supposed he had done so, on June 2, 1898, on the John Patton tract, for which the land was sold on June 13, 1898, by the treasurer, then the treasurer's sale is void and vested no title in the defendants. Second, as to the argument to us that John L. Trexler did not tell the truth about the check and receipt being burned, it is entirely out of place. If there was anything in his manner of testifying or other circumstances appearing in evidence to justify such an argument, it ought to have been addressed to the jury.

We find in the record fifteen assignments of error. The first, second and third do not call for discussion and they are not sustained.

The fourth assignment relates to permitting a witness to testify to the precise amount of the check given by John L. Trexler to the treasurer, and that it amounted to the taxes due on the William Smith tract, with fifty cents added. This for the purpose of contradicting John L. Trexler when he said he paid all of the taxes demanded of him. This testimony was competent as a part of the res gestæ. We cannot say that the court erred in admitting it. It is true that it does not positively contradict John L. Trexler's statement that he paid all the taxes demanded of him by the treasurer. But we think it was for the consideration of the jury in determining the credibility of Trexler and the weight to be given to his testimony. But if the jury believe Trexler, and find that he asked for the taxes on both tracts and paid the amount furnished him by the treasurer, believing it to be in full of the taxes on both tracts, then the amount of the check is not of much consequence. The fourth assignment is not sustained.

The fifth assignment stands practically upon the same ground as the fourth. Trexler did not testify that he actually paid all of the taxes due on the John Patton tract and the William Smith tract. He testified, in substance, that he asked for all of the taxes on both tracts, and gave a check for said taxes as stated to him by the treasurer. He further testified that he had no recollection of the amount, and did not know whether it was sufficient to pay all of the taxes on both lots or not. Therefore, the testimony quoted in this assignment does not directly contradict John L. Trexler. But we are inclined to think that it may be submitted to the jury, under appropriate instructions, as bearing upon the credibility of John L. Trexler and his recollection of what actually took place between him and the treasurer. The fifth assignment is not sustained.

The sixth assignment is sustained because the evidence quoted therein does not contradict John L. Trexler as to what he said to the treasurer on June 2, 1898.

The seventh assignment is sustained because it was not competent to prove a custom of the office as to the form of receipts given for taxes on unseated lands. If the defendant had pro-

posed to prove the contents of the receipt delivered to Trexler, and destroyed by fire, as he says, it might have been competent as a part of the res gestæ.

The eighth assignment is sustained. If Mr. Trexler asked to pay the taxes on both tracts and the treasurer gave him an amount and he paid it, he had a right to rely on the correctness of the treasurer's work, and he was not guilty of laches if he failed to examine the receipt and books, and figure the amount of the taxes himself.

The ninth assignment is sustained. There is nothing in the evidence to warrant the court in saying : " But with Trexler's evidence must be taken into consideration all that transpired at the time, the entries in the records of the court, the entries in these books, the receipt, if it is there ; if not, then such other evidence as is explanatory of the receipt, the check, the amount of money that was paid, the amount of taxes that were assessed, these are all to be taken into consideration. There are no records of the court in evidence which throw any light upon what took place between Trexler and the treasurer. The difficulty with the excerpt from the charge is that the jury probably thought that all of the things referred to by the court contradicted Trexler. But they did not. It is difficult for us to see how he is contradicted by anything except the presumption that the treasurer, a public officer, would do his duty, and this is not very strong evidence as against the positive testimony of a living witness.

The tenth assignment is sustained. This excerpt from the charge makes entirely too much of the fact that the tax (meaning on the John Patton tract) was not paid and that the land was not redeemed for two years. The plaintiffs are not asserting that they actually paid all of the taxes due on the two tracts and they are not driven to any such position. They can avoid the tax sale by satisfying a jury that they made an honest effort to pay the taxes, and supposed that they were paid, and that they were misled by the treasurer. It was serious error to call the jury's attention to the fact that the land was not redeemed for two years. If Mr. Trexler supposed he paid the taxes in full on the Patton tract, why should he redeem ? If the treasurer, by mistake, mislead him into believing that he had paid these taxes and then proceeded to sell the land, thereby adding costs

and expenses to the taxes, the plaintiffs were not obliged to redeem from that sale for the reason that it was void. If the treasurer had discovered his mistake, if he was mistaken, before the sale, and had notified Trexler and demanded more money, and they had not paid it, a different question would have been presented, one that is not now raised.

The eleventh assignment is sustained, because in that excerpt from the charge the learned court said : " The only verbal testimony we have is the testimony of Mr. Trexler, one of the plaintiffs. That is contradicted by the records of the court." This is clear error—there were no records of the court in evidence contradicting Trexler's oral testimony as to what took place between him and the treasurer.

The twelfth assignment is sustained because the language used by the court, therein quoted, tends to lead the jury to attach entirely too much importance to the fact that J. Simpson Africa paid the taxes on the John Patton tract on June 13, 1898. That was the day of the sale. Of course nobody disputed that, but how does it contradict John L. Trexler's oral testimony as to what took place between him and the treasurer on June 2, 1898 ?

The thirteenth assignment is sustained. If John L. Trexler's testimony is true, it is of no consequence that the plaintiffs did not redeem the land from the sale of June 13, 1898. We have already said, in answer to another assignment, that they were not bound to redeem under such circumstances. It was error to say to the jury : " If you believe that what transpired at that time was written in the records, and that they are correct, then the plaintiffs cannot recover." Nobody pretends that the conversation between John L. Trexler and the treasurer was written in any records, and, therefore, the language quoted in this assignment tended to mislead the jury.

The fourteenth assignment must be sustained. We have already said in regard to another assignment that it was error to press to the attention of the jury that there was no redemption from the sale of June 13, 1898.

The fifteenth and last assignment is : " The court erred in not affirming the plaintiffs' fifth point, which point and answer is as follows : ' Under all the evidence in the case the verdict of the jury must be for the plaintiff.' *Answer:* Refused."

395, (1907).]          Opinion of the Court.

This assignment has given us some trouble.  It is based on the ground that John L. Trexler's testimony, as to his attempt to pay the taxes on the John Patton tract and what took place between him and the treasurer on June 2, 1898, is really not contradicted.  Our understanding of the law on this point, as settled by a long line of cases in our Supreme Court, followed by this court, is that where a plaintiff's case rests on oral testimony, the question of the credibility of the witness, even when uncontradicted, is for the jury.  They may look at the witness, observe his manner of testifying and the character of his testimony, and the circumstances under which he is testifying, and believe or disbelieve him as their best judgment dictates.  We think the learned court ought to have said to the jury, if you believe the testimony of John L. Trexler, and that he honestly attempted to pay the taxes on the John Patton tract, and failed through the mistake of the treasurer, and the plaintiffs had no notice of the mistake till after the sale, then your verdict will be for the plaintiffs.

In Grambs v. Lynch, 4 Penny. 243, our Supreme Court said: "It is settled law that when a case depends upon oral testimony, such testimony must be submitted to the jury."

In Lautner v. Kann, 184 Pa. 334, the Supreme Court said (p. 338): "The credibility of a witness is for the jury, and they are not bound to accept his statements because he is unimpeached and uncontradicted by other witnesses.  He may impeach and contradict himself on the witness stand, or the jury may believe that he is honestly mistaken. . . .  The question is for the jury and not for the court."

In Lehigh Coal, etc., Company v. Evans et al., 176 Pa. 28, the point is well stated in the syllabus : " Where a case depends on oral testimony, such testimony must be submitted to the jury."  " In an action of ejectment, where the plaintiff relies upon the breach of a condition alleged to have been contained in a lost deed, and offers the testimony of two witnesses as to the terms of the condition, the case is for the jury, although the defendant offers no testimony to contradict the testimony offered by plaintiff as to the contents of the lost deed."

In Reel v. Elder, 62 Pa. 308, SHARSWOOD, J., (p. 316) said: "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of

the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence." See also Dinan, Appellant, v. Supreme Council, 210 Pa. 456; also Corcoran v. Life Ins. Co., 183 Pa. 443.

In our own court we have followed these decisions many times. One of these cases is Barnett v. Becker, 25 Pa. Superior Ct. 22.

We would not have thought it necessary to cite authorities on this point were it not for the case of Knupp v. Brooks, 200 Pa. 494, on the strength of which the learned counsel for the appellant argues that the court ought to have given a binding instruction in favor of the appellant on John L. Trexler's uncontradicted testimony. But suppose the jury did not believe Trexler? In the case just cited, the late Justice DEAN said: "The court left the credibility of Jamison to the jury and they found in his favor, but if they had found otherwise, the court would have been bound to set the verdict aside as palpably against uncontradicted evidence. We have more than once said, that where the jury finds a verdict which the court is bound to at once set aside, it may give peremptory instructions as to what their verdict should be. Such instructions would have been proper in this case, but, as the jury found for the defendants, no harm resulted to the plaintiffs."

In that case Jamison testified that he paid the taxes on the whole 364 acres. It is admitted that he paid the amount assessed on all of his other tracts except this; but the entry shows he paid on only 334 acres of No. 17, instead of on 364. But the treasurer did not definitely say the sale was on default of payment on thirty acres; he sold 150 acres. The sales book showed that both before and after the sale, Jamison paid to the treasurer regularly the tax on the 364 acres. Judge DEAN could find nothing in contradiction of this testimony, and he said: "the court and jury doubtless both gave it full credit and the court might properly on it alone have instructed the jury, that there was no unpaid tax to support the sale to Ball. That case differs from the one at bar. There was the positive testimony of Jamison that he paid on 364 acres and the books and the circumstances seem to corroborate this, but the treas-

urer made his books show paid on 334 acres and then proceeded to sell 150 acres. On his own books he could not have sold but thirty. Therefore, Jamison's testimony was positive, clear and convincing, but, nevertheless, under the cases above cited and many others, we are not able to see why the credibility of Jamison was not for the jury. The language we have quoted from Judge Dean's opinion was not necessary to a decision of the case, and in view of the doctrine of the other cases cited, we feel bound to consider the language as dicta, and that it was not intended, by the court, to overrule the established and settled law of this state that where a plaintiff's case depends on oral testimony, the credibility of the witnesses is for the jury, even when they are not contradicted. We feel bound to hold, under a large number of plain decisions of the Supreme Court, that the fifteenth assignment cannot be sustained.

In view of the two mistrials of this case we feel constrained to say that, in our judgment, it is a very simple case to try. There does not appear to be in the record of either trial anything substantial to contradict the testimony of John L. Trexler, except the presumption that a public officer will discharge his duty, but this presumption is only prima facie, and if the testimony of John L. Trexler is believed by a jury, it completely rebuts such presumption. An oral argument was pressed to our attention that the plaintiffs could not recover because the present suit was not commenced within five years after the sale of the land for taxes on June 13, 1898. The third section of the act of April 3, 1804, 4 Sm. L. 201 reads: "No action for recovery of said land shall lie, unless the same be brought within five years after the sale thereof for taxes as aforesaid."

First, it may be replied to this that the present is not an action for the recovery of the land claimed by the defendants under the tax title. We have already said that neither party to this suit was in actual possession of the land. The plaintiffs, however, showed a prima facie title to this unseated land which gave them the right to maintain an action of trespass against a wrongdoer. To the plaintiffs' case the defendants replied the tax title of June 13, 1898, and this without more would have been a good defense. But the plaintiffs replied to this by showing what they alleged took place on June 2, 1898,

between John L. Trexler and the treasurer of Huntingdon county. If Trexler's version of the transaction between himself and the treasurer is believed by a jury, it renders the tax title absolutely void. In our opinion, the limitation provided in the act of 1804 will not put validity into a void tax title. When the defendants undertook to defend against the alleged trespass by showing a tax title they could not stand on such title based on a treasurer's sale where no taxes were due and unpaid.

In McReynolds et al. v. Longenberger, 57 Pa. 13, the Supreme Court (p. 27) said: " the authority of the treasurer to sell unseated lands for taxes depends upon facts; viz., that the land was unseated at the time of the assessment; that a tax appears to have been, and was in fact assessed upon it by the proper assessing officers, and that the tax had been due for one whole year, and remains unpaid. The absence of either of these facts involves an exemption from the penalties of the acts of 1804 and 1815." The reason of this decision undoubtedly is that the lack of either of the above requisites renders the tax title void and the five years' limitation will not breathe life into a void tax title. If John L. Trexler correctly states what took place between himself and the treasurer on June 2, 1898, the land was relieved of the lien of the taxes, although they were not paid, as effectually as if they had been paid in full. If they had been so paid, no lawyer will argue that the tax title was or could be of any value. See also Hole v. Rittenhouse, 19 Pa. 305; Rogers v. Johnson and Wife, 67 Pa. 43. In our opinion the five years' limitation provided in the act of 1804 does not stand in the way of the plaintiffs in the present case.

The judgment is reversed with a v. f. d. n.